3 December 1999

Nos. 2--98--1270 & 2--98--1424 cons.

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Du Page County.

)

Plaintiff-Appellee, )

) No. 98--CF--1033

v. )

)

HARVEY J. PATTERSON, ) Honorable

) Michael J. Burke,

Defendant-Appellant. ) Judge, Presiding.

________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Harvey J. Patterson, filed a 
pro
 
se
 notice of appeal, and, soon afterwards, the clerk of the circuit court filed an appeal on defendant's behalf.  We have consolidated the two appeals, which raise a single issue. 

Defendant was charged with forgery (720 ILCS 5/17--3(a)(1) (West 1998)), attempted theft (720 ILCS 5/8--4(a), 16--1(a)(1)(A) (West 1998)), attempted aggravated unlawful possession of a stolen motor vehicle (720 ILCS 5/8--4(a) (West 1998); 625 ILCS 5/4--

103.2(a)(3) (West 1998)), and vehicle theft conspiracy (625 ILCS 5/4--103.1(a) (West 1998)).  Pursuant to a negotiated plea agreement, defendant pleaded guilty to forgery and attempted possession of a stolen motor vehicle.  Defendant was sentenced to four years on each count with the sentences to run concurrently, and he was credited with 113 days served.  Soon afterwards, the State moved to have the $6,000 defendant used to fraudulently purchase the vehicle disposed of pursuant to section 1 of the Law Enforcement Disposition of Property Act (Act) (765 ILCS 1030/1 (West 1998)).  The trial court granted the State's motion.  Defendant appeals, arguing that there was no authority for the trial court's order that allowed the State to dispose of the $6,000.  We affirm.

The basis for defendant's guilty plea established that on June 1, 1998, defendant, using the alias Kurt Kappes, entered into a contract with Bill Kay Chevrolet to purchase a 1998 Chevrolet Corvette for $47,851.45.  Defendant took a substantial step towards possessing the vehicle in that defendant, claiming to be Kurt Kappes, took possession of the vehicle knowing that he was not entitled to possess it.     

After defendant pleaded guilty, a hearing was held on the State's motion to dispose of the $6,000 defendant used as a down payment on the 1998 Corvette.  At the hearing, Sergeant Michael Tellone of the Du Page County sheriff's department testified that defendant first claimed ownership of the $6,000.  Defendant said that he was going to use the money to buy himself a 1998 Corvette as a birthday gift.  However, defendant later told Officer Tellone a different story.  Specifically, defendant said that he wanted to buy a driver's license from a Gangster Disciple who sold driver's licenses for $600.  Instead of paying the Gangster Disciple $600, defendant made a deal with this individual whereby defendant would receive a driver's license and, in return, the Gangster Disciple would give defendant $6,000 to use to fraudulently purchase a 1998 Corvette for the Gangster Disciple.  Defendant said that he was going to drive the car around for awhile and then turn the car over to the Gangster Disciple who gave him the $6,000.

Officer Robert Valenta testified that he spoke with defendant after defendant was arrested.  During their conversation, Officer Valenta told defendant that he was going to have to take an additional $1,389 that defendant had when he was arrested.  Defendant said that he did not care about the police taking the $6,000 because that money was not his.  However, defendant stated that he did not want the officers to take the $1,389 because that money did belong to him.

Defendant testified that he told Officer Tellone that he saved the $6,000 in order to buy himself a car for his birthday.  Defendant took all of the money he had saved to the dealership and counted out the $6,000 down payment.  He then put the rest of the money he had in his pocket.  Defendant denied ever talking with Officer Valenta about the $6,000.

On cross-examination, defendant testified that he worked for Green Power Development (Green Power) and Manpower.  Defendant would work at Green Power when there was no work at Manpower, and he would work at Manpower when there was no work for him at Green Power.  At Manpower, defendant worked 40 hours per week and earned $56 a day.  Defendant would earn between $117 to $130 a day at Green Power.  Before working at these two establishments, defendant  did odd jobs and worked as a mover.  He stated that he made around $300 to $400 a week during this time.  Defendant claimed that the monthly payments for the 1998 Corvette amounted to $700 per month, and defendant testified that he could pay this amount in addition to his other expenses, which included $400 a month for rent.  Defendant also stated that he was in prison prior to 1989, and he was again incarcerated for 23 months between 1995 through 1997.

After hearing the testimony, the trial court granted the State's motion to have the funds disposed of pursuant to section 1 of the Act (765 ILCS 1030/1 (West 1998)).  In granting the State's motion, the trial court stated that it believed the officers' testimony over defendant's and found that defendant illegally obtained and possessed the $6,000 in order to fraudulently purchase the 1998 Corvette.  This timely appeal followed.

Before addressing defendant's argument, we must note that the State's brief is clearly lacking in any thoughtful argument.  The State's only claim is that defendant lacks standing to challenge the disposition of the $6,000.  The State argues that defendant does not have standing because he attempted to assert the ownership rights of another, and the trial court did not find defendant credible when he claimed that the $6,000 belonged to him.  In making its argument, the State cites to only one case, 
Jenner v. Wissore
, 164 Ill. App. 3d 259, 266-67 (1988), for the general and widely accepted proposition that judicial economy mandates that parties who lack standing cannot bring their claims before the courts.  

In contrast to the assertions made in the State's poorly written brief, which failed to assist this court at all, our own research and review of this case clearly established that defendant had standing to contest the forfeiture of the $6,000.  The central question to ask when deciding standing issues is whether or not the party against whom a lack-of-standing claim is made has a real interest in the outcome of the controversy.  
People v. $1,124,905 U.S. Currency & One 1988 Chevrolet Astro Van
, 177 Ill. 2d 314, 328 (1997).  In making this assessment, a court must decide whether or not the party will be benefitted if the relief sought is granted.  
In re Marriage of Rodriguez
, 131 Ill. 2d 273, 280 (1989).

Here, defendant clearly had standing.  Defendant was the possessor of the $6,000, and he has never conceded that the $6,000 did not belong to him.  Because defendant claimed he was the possessor of the $6,000, he clearly had an interest in the forfeiture proceedings.  Also, defendant will be benefitted if he is awarded the $6,000 because the money will be returned to him, the alleged rightful owner.

Further, we find it absurd that defendant could have standing in the trial court by claiming that the $6,000 was his and then miraculously lose his standing based on the fact that the trial court did not find defendant credible.  Such a result would prevent every defendant in forfeiture proceedings from challenging a trial court's judgment that granted forfeiture based on the credibility of the witnesses.

We next address defendant's argument.  Defendant first contends that he legally possessed and was the owner and rightful possessor of the $6,000.  Thus, defendant claims that the $6,000 should have been returned to him.

The primary rule of statutory construction involves ascertaining the legislature's intent.  
People v. $8,450 United States Currency
, 276 Ill. App. 3d 952, 954 (1995).  The legislature's intent can be determined by looking at the language of the statute and construing each section of the statute together as a whole.  
$8,450 United States Currency
, 276 Ill. App. 3d at 954.  When the language of the statute is unambiguous, the court may not depart from the language and read into the statute exceptions, limitations, or conditions. 
$8,450 United States Currency
, 276 Ill. App. 3d at 954.

Section 1 of the Act provides, in relevant part, as follows:

"This Act is applicable to all personal property of which possession is transferred to a police department *** under circumstances supporting a reasonable belief that such property was abandoned, lost or stolen or otherwise illegally possessed[.]" 765 ILCS 1030/1 (West 1998).

Section 2(a) of the Act provides as follows:

"Such property believed to be abandoned, lost or stolen or otherwise illegally possessed shall be retained in custody by the sheriff *** which shall make reasonable inquiry and efforts to identify and notify the owner or other person entitled to possession thereof, and shall return the property after such person provides reasonable and satisfactory proof of his ownership or right to possession[.]"  765 ILCS 1030/2(a) (West 1998).

Here, the plain meaning of the statute indicates that property illegally possessed may be retained by the police department, and the property will be returned to an individual who reasonably and satisfactorily establishes ownership of or the right to posses the seized property.  The facts of this case showed that defendant failed to establish that he legally possessed the $6,000 and that he was the rightful owner of the money.  Rather, the evidence established that defendant was given the money for an unlawful purpose and used the money in the intended way.  The trial court chose to believe the testimony of the officers over defendant's, and we cannot say that the trial court erred in making this assessment.  See 
People v. $5,970 United States Currency
, 279 Ill. App. 3d 583, 588 (1996) (trial court, as the trier of fact in a forfeiture case, determines the credibility of the witnesses and draws reasonable inferences and reaches conclusions to which the evidence lends itself).

Defendant argues in the alternative that the Act does not apply to him because the $6,000 was not illegally possessed.  Specifically, defendant argues that the fact that a person possessing money may intend to use it in furtherance of a crime does not, in and of itself, convert the money to contraband. 

In addressing defendant's argument, it is important to understand the difference between contraband 
per
 
se
 and derivative contraband.  Contraband 
per
 
se
 is property that is inherently illegal to possess.  
$5,970 United States Currency
, 279 Ill. App. 3d at 591.  On the other hand, derivative contraband is property that is not inherently illegal but is used in an unlawful manner. 
$5,970 United States Currency
, 279 Ill. App. 3d at 591.

Here, the $6,000, in and of itself, is not illegal.  However, the $6,000 was given to defendant for an unlawful purpose, to defraud the dealership, and he used the money in an attempt to accomplish this illegal act.  See 
$5,970 United States Currency
, 279 Ill. App. 3d at 591 (money used to buy drugs was considered derivative contraband because the money was used for an unlawful purpose).  Thus, defendant's argument that the $6,000 was not contraband must fail.

Defendant then argues that the testimony elicited at trial showed that defendant had a right to possess the $6,000.  While our independent research has failed to find cases specific to the Act, we have found instructive cases involving forfeiture under the Illinois Controlled Substances Act (720 ILCS 570/100 
et
 
seq.
 (West 1998)) and the seizure of gambling devices and gambling funds (720 ILCS 5/28--5 (West 1998)).  In these contexts, the law provides that a reviewing court should not reverse a finding of forfeiture that the trial court made unless the finding is against the manifest weight of the evidence.  
$5,970 United States Currency
, 279 Ill. App. 3d at 588; 
People v. Whitamore
, 241 Ill. App. 3d 519, 528 (1993).  In order to reach the manifest weight of the evidence standard, the opposite conclusion must be clearly evident.  
People  ex rel. Waller v. Seeburg Slot Machines
, 267 Ill. App. 3d 119, 125 (1994).  We believe that this standard of review should apply to cases under the Act because the trial court assessed the believability of the evidence, and a reviewing court should give deference to the trial court's observations.  
Whitamore
, 241 Ill. App. 3d at 528.

Here, Officer Tellone testified that defendant was using the $6,000 to fraudulently purchase a 1998 Corvette from Bill Kay Chevrolet.  Officer Valenta stated that, when he tried to retrieve the additional $1,389 found on defendant when defendant was arrested, defendant clearly indicated that the $6,000 was not his.  In contrast to the officers' testimony, defendant claimed that he could afford to make a $700-a-month car payment, which seems low, in addition to paying his expenses and paying $400 a month for rent.  Defendant said he could make the payments despite the fact that he sometimes earned only $300 a week.  Defendant further claimed that he was able to save over $6,000 by making between $300 and $910 per week even though he was incarcerated for almost two years right before he purchased the 1998 Corvette.  After hearing the testimony and weighing the evidence, the trial court specifically stated that it believed the officers' testimony over defendant's.  We cannot say, after reviewing the record, that the trial court's determination was against the manifest weight of the evidence.  Therefore, we conclude that the trial court properly granted the State's motion to dispose of the $6,000 pursuant to the Act. 

For these reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

RAPP and GALASSO, JJ., concur.