THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NATHAN PALMER, Defendant-Appellant.

Second District     No. 2—02—0592

Opinion filed March 26, 2004.

944

GILLERAN JOHNSON, J., specially concurring.
BOWMAN, J., dissenting in part.

G. Joseph Weller and Darren E. Miller, both of State Appellate Defender's Office, of Elgin, for appellant.

Meg Gorecki, State's Attorney, of St. Charles (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and John R. Roe, of Chicago, for the People.

JUSTICE McLAREN delivered the opinion of the court:

Following a jury trial, defendant, Nathan Palmer, was convicted of one count of attempted first degree murder (720 ILCS 5/8—4(a), 9—1(a)(1) (West 2002)), two counts of home invasion (720 ILCS

5/12—11 (West 2002)), one count of armed robbery (720 ILCS.5/18—2(a) (West 2002)), and four counts of aggravated criminal sexual assault (720 ILCS 5/12—14(a)(1), 14(a)(2) (West 2002)). Adjudged an habitual criminal, defendant was sentenced to seven consecutive life sentences. On appeal, defendant argues that the court erred in imposing consecutive life sentences, because section 33B—1(c) of the Criminal Code of 1961 (the habitual criminal statute) (720 ILCS 5/33B—1(c) (West 2002)) mandates that convictions connected with the same transaction be counted as one conviction (720 ILCS 5/33B—1(c) (West 2002)). In addition, defendant argues that two of the convictions violate the one-act, one-crime rule set forth in *People v. King*, 66 Ill. 2d 551, 566 (1977), and that the indictment failed to differentiate between separate acts of criminal sexual assault, as required under *People v. Crespo*, 203 Ill. 2d 335, 345 (2001) (supplemental opinion filed March 31, 2003). We affirm in part, reverse in part, and vacate in part.

In an amended indictment filed on March 22, 2000, defendant was charged with two counts of home invasion, one count of attempted murder, four counts of aggravated criminal sexual assault, and one count of armed robbery. Count I alleged that defendant entered the dwelling place of M.J. and used force or threatened the use of force while armed with a dangerous weapon. Count II alleged that defendant entered the dwelling place of D.J. and intentionally caused him injury by slashing his throat. Count III alleged that defendant intended to kill D.J. by strangling him with an electrical cord and slashing his throat. Counts IV and V alleged that defendant, while displaying a knife, placed his penis in the mouth and vagina of M.J. by the use of force. Counts VI and VII alleged that defendant caused bodily harm to M.J. by placing his penis in her mouth and vagina. Count VIII alleged that defendant, while armed with a knife, took cash and a ring from M.J. by the use of force or by threatening the use of force.

Only a brief recitation of the facts is necessary for the purposes of this appeal. On July 18, 1999, at approximately 12:30 p.m., defendant knocked on the door of M.J. and D.J.'s two-bedroom apartment. M.J., D.J., and their two children were inside the apartment at the time. Defendant asked M.J. if she wanted to buy a newspaper, and M.J. replied that she did not. D.J., who was sitting on the couch at the time, also indicated that he did not wish to buy a newspaper. At this point, defendant was standing inside the apartment, although M.J. had not invited him to enter.

Defendant took out a steak knife and placed it against M.J.'s neck. Defendant instructed M.J. and D.J. to get M.J.'s purse, and defendant was given $50. While the children were in the living room, defendant

then directed M.J. and D.J. into the bedroom, where he took M.J.'s wedding ring. Defendant then tied D.J.'s hands with an extension cord and had M.J. place a pillow case over D.J.'s head. Defendant threatened to kill D.J. if M.J. refused to comply.

Next, defendant unzipped his shorts and told M.J. to "suck" his penis. Defendant made M.J. get on her knees before "shov[ing] it in [her] mouth" for about 20 minutes. During this time, defendant held the knife at M.J.'s back. Defendant failed to ejaculate. When the children came to the bedroom door, defendant instructed M.J. to make them return to the living room. Defendant then had M.J. suck his penis again, although he did not ejaculate. At this point, defendant had M.J. remove her clothes, get on the bed, and "play with her genitals." Defendant fondled himself but again failed to ejaculate.

Defendant then directed D.J. to get on the bed, and told M.J. to "suck" D.J.'s penis. At trial, M.J. testified that defendant also placed his penis or his fingers into her vagina for a minute or two. After reviewing her taped statement to police regarding the incident, M.J. testified that she had told police that defendant inserted his penis into her vagina.

Next, defendant and M.J. went into the kitchen and defendant took some beer out of the refrigerator. Upon returning to the bedroom, defendant "shoved" his penis into M.J.'s mouth, causing her to vomit. After defendant forced M.J. to clean up the vomit, he had her sit on a chair where he tied her wrists with an electrical cord. Defendant again forced his penis into her mouth for about 15 minutes. After failing to ejaculate, defendant placed a pillow case over M.J.'s head, hit her in the face, put a towel in her mouth, and put her in the bathroom.

While in the bathroom, M.J. removed the pillow case from her head and observed defendant and D.J. struggling in the bedroom. According to D.J., defendant attempted to strangle him with the extension cord, and D.J. pretended that he was dying. After learning that D.J. was trying to trick him, defendant took the knife and slit his throat. M.J. then ran screaming out of the apartment, defendant exited via the stairwell, and a 911 operator was called.

The jury found defendant guilty on all eight counts and judgment was entered on February 27, 2002. On May 14, 2002, the State filed a petition to have defendant adjudicated an habitual criminal. On May 30, 2002, defendant filed a motion for a new trial and a motion to declare the habitual criminal statute (720 ILCS 5/33B—1 (West 2002)) unconstitutional. The court denied these motions.

At the hearing on the petition, the State presented certified copies of convictions showing that defendant was convicted of criminal sexual assault on October 14, 1987, and aggravated criminal sexual assault

on March 25, 1994. Defendant stipulated that this information was accurate and that he met the statutory requirements necessary to be adjudicated an habitual criminal. The court adjudged defendant an habitual criminal on May 30, 2002. The court then ordered that counts I and II as to home invasion would merge for the purposes of sentencing. Defendant was sentenced to seven consecutive life sentences for counts II through VIII.

■ On appeal, defendant contends that the court erred in imposing consecutive life sentences. As a preliminary matter, we note that the State argues that this issue was waived because it was not raised at trial. However, pursuant to Supreme Court Rule 615(a), we may review plain errors affecting substantial rights even where they were not brought to the attention of the trial court. 134 Ill. 2d R. 615(a). Because sentencing issues are regarded as matters affecting a defendant's substantial rights and are thus excepted from the doctrine of waiver, we consider the merits of defendant's argument. See *People v. Baaree*, 315 Ill. App. 3d 1049, 1050-51 (2000).

According to defendant, the court erred in imposing seven consecutive life sentences, because the habitual criminal statute prohibits the imposition of more than one sentence of life imprisonment when all of the convictions "are connected with the same transaction, or result from offenses committed at the same time" (720 ILCS 5/33B—1(c) (West 2002)). Defendant maintains that, because all of his convictions were connected with the same transaction, section 33B—1(c) mandated that they be treated as "one conviction" for the purposes of sentencing. Thus, based on this "one conviction," only one life sentence should have been imposed. As this is an issue of statutory construction, our review is *de novo. In re Detention of Lieberman*, 201 Ill. 2d 300, 307 (2002).

■ Our primary objective in construing the meaning of a statute is to ascertain and give effect to the intention of the legislature. *Lieberman*, 201 Ill. 2d at 307. In order to determine legislative intent, we examine the language of the statute, which is " 'the most reliable indicator of the legislature's objectives in enacting a particular law.' " *Lieberman*, 201 Ill. 2d at 308, quoting *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). The statutory language is to be afforded its plain, ordinary, and popularly understood meaning. *Lieberman*, 201 Ill. 2d at 308. If the language of the statute is unambiguous, the court must not depart from the language and read into it exceptions, limitations, or conditions. *People v. Patterson*, 308 Ill. App. 3d 943, 948 (1999). Moreover, "criminal or penal statutes are to be strictly construed in favor of the accused, and nothing should be taken by intendment or implication beyond the obvious or literal meaning of the statute." *People v. Davis*, 199 Ill. 2d 130, 135 (2002).

■ This case hinges upon the interpretation of section 33B—1(c) of the habitual criminal statute, which states, in pertinent part:

"(a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.

(b) The 2 prior convictions need not have been for the same offense.

(c) Any convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this Section as one conviction.

***

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment." 720 ILCS 5/33B—1 (West 2002).

Adjudication as an habitual criminal subjects a defendant to a mandatory sentence of natural life imprisonment. The question before us is whether an habitual criminal may receive consecutive life sentences for offenses that were connected with the same transaction. While the habitual criminal statute has withstood numerous constitutional attacks (see *People v. Dunigan*, 165 Ill. 2d 235 (1995)), our research has revealed no cases addressing this particular issue.

It is the State's position that the trial court properly imposed consecutive life sentences in this case. The State does not dispute that defendant's convictions were connected with the same transaction. Rather, the State asserts that the word "convictions" in section 33B—1(c) necessarily refers to "prior convictions," and not to the offenses committed by defendant in the present case. The State further asserts that the term "conviction" cannot apply to defendant's present offenses since a "conviction" requires imposition of a sentence. We reject both of these arguments.

■ As stated previously, section 33B—1(c) of the habitual criminal statute explicitly states that "[a]ny convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this Section as one conviction." 720 ILCS 5/33B—1(c) (West 2002). In construing the sections of the statute together as a whole, as we are bound to do, we note that the language in sections 33B—1(a) and (b) explicitly refers to a defendant's "2 prior convictions." However, the words "2 prior" are noticeably absent in section 33B—1(c). Rather, that section

expressly states that "[a]ny convictions *** shall be counted for the purposes of this Section as one conviction." 720 ILCS 5/33B—1(c) (West 2002). When the legislature used certain words in one instance and different words in another, different results were intended and the terms cannot be interpreted as equivalents. *Costello v. Governing Board of Lee County Special Education Ass'n*, 252 Ill. App. 3d 547, 558 (1993). Absent any reference to "2 prior convictions," the plain language of section 33B—1(c) explicitly mandates that "[a]ny convictions" be counted as one conviction. Moreover, had the legislature intended that section 33B—1(c) apply only to a defendant's "2 prior convictions," as posited by the State, it easily could have said so. However, the principles of statutory construction compel us to strictly construe criminal statutes in favor of the accused and not read into them exceptions, limitations, or conditions.

Nor are we persuaded by the State's argument that defendant's current offenses may not be considered "convictions" for purposes of the statute. According to the State, "convictions" encompass a finding of guilty *and* a sentence. Because defendant here was found guilty on eight counts, but never sentenced except pursuant to the habitual criminal statute, the State argues that the term "convictions" cannot apply to the present offenses. We disagree.

The term "conviction" is defined as "a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." 720 ILCS 5/2—5 (West 2002). According to the principles of statutory construction, material to either side of the disjunctive "or" must be viewed separately. *People v. Franklin*, 135 Ill. 2d 78, 106 (1990). Thus, the plain language of the definition itself indicates that "a judgment of conviction" and "a sentence" are separate and distinct. *Franklin*, 135 Ill. 2d at 106. As a result, defendant was "convicted" of the present offenses when the trial court entered a judgment on the verdict of guilty, and section 33B—1(c) applies.

■ The State also contends that the trial court was required to sentence defendant to consecutive life sentences pursuant to section 5—8—4(a) of the Unified Code of Corrections. Section 5—8—4(a) provides:

> "When multiple sentences of imprisonment are imposed on a defendant at the same time, *** the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless:

(i) one of the offenses for which defendant was convicted was *** a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or

(ii) the defendant was convicted of a violation of Section 12—13, 12—14, or 12—14.1 of the Criminal Code of 1961, ***

\* \* \*

in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5—8—4(a) (West 2002).

Because all of the offenses committed by defendant were Class X felonies, and because defendant inflicted severe bodily injury to both M.J. and D.J., it is the State's position that consecutive sentences in this case were mandatory. We disagree.

■ In imposing seven consecutive life sentences, the trial court indicated that it relied on section 5—8—4(a) and *People v. Curry*, 178 Ill. 2d 509 (1997). However, the court's reliance on *Curry* was misplaced. In *Curry*, the court held that consecutive sentences are mandatory only for those offenses that trigger the application of section 5—8—4(a). *Curry*, 178 Ill. 2d at 538. There, the defendant was convicted of one count of residential burglary, a nontriggering offense, and two counts of criminal sexual assault, a triggering offense. *Curry*, 178 Ill. 2d at 515. The court held that section 5—8—4(a) must be construed so that any consecutive sentences imposed for triggering offenses be served prior to, and independent of, any sentences imposed for nontriggering offenses. *Curry*, 178 Ill. 2d at 539. However, *Curry* did not involve the habitual criminal statute and is therefore inapposite to the case at bar.

Additionally, we do not believe that section 5—8—4(a) mandates consecutive sentences in this case. Section 5—8—4(a) concerns the imposition of concurrent or consecutive terms when a defendant receives *multiple* sentences of imprisonment. Because the habitual criminal statute precludes defendant from receiving multiple sentences in this case, that section is not triggered. As we have already determined, section 33B—1(c) of the habitual criminal statute mandates that defendant's convictions be counted as "one conviction" since they were all connected with the same transaction. Because defendant can be sentenced for only "one conviction," section 5—8—4(a) does not apply. Moreover, the court was required to adjudge defendant an habitual criminal, and the provisions of that statute govern. See *Antunes v. Sookhakitch*, 181 Ill. App. 3d 621, 628 (1989) (Illinois courts have long followed the principle of statutory construction that specific statutory provisions control over general statutory provisions).

The State's final argument is that defendant should not be

sentenced for one conviction when he committed multiple offenses, all of which trigger the habitual criminal statute. While the legislative history is silent as to the language currently contained in section 33B—1(c) (the language was originally part of subsection (b)), our research has revealed that other state courts treat multiple, related convictions as one conviction for purposes of habitual offender enhancements. See *Carter v. State*, 686 N.E.2d 834, 839 (Ind. 1998) (in the event of simultaneous multiple-felony convictions and a finding of habitual offender status, trial courts must impose the resulting penalty enhancement upon only one of the convictions and must specify the conviction to be so enhanced); *Hutchinson v. Dietrich*, 183 W. Va. 25, 28, 393 S.E.2d 663, 666 (1990) (multiple convictions rendered on the same day should be treated as a single conviction for purposes of the habitual criminal statute, and multiple convictions can be enhanced under the statute only once for purposes of sentencing). It is the province of the legislature, and not this court, to declare and define conduct constituting a crime and to determine the nature and extent of a criminal sentence. *Dunigan*, 165 Ill. 2d at 244. Consequently, defendant's multiple convictions should be treated as one conviction for the purposes of sentencing under the habitual criminal statute. As such, we vacate the trial court's sentencing order imposing seven consecutive life sentences. Pursuant to our authority under Supreme Court Rule 615(b) (134 Ill. 2d R. 615(b)), we reduce defendant's term to one life sentence.

As a final matter, defendant asks this court to vacate the following: (1) the conviction of home invasion (count I); (2) the conviction of and sentence for aggravated criminal sexual assault (count V); and (3) the conviction of and sentence for aggravated criminal sexual assault (count IV). The State confesses error as to all three counts. Under the facts of this particular case, we agree and vacate counts I, IV, and V.

■ Defendant first requests that the conviction on count I be vacated under the one-act, one-crime doctrine. Defendant was convicted of two counts of home invasion. Count I alleged that defendant entered the dwelling place of M.J. and used force or threatened the use of force against her while armed with a dangerous weapon. Count II alleged that defendant entered the dwelling place of D.J. and intentionally caused him injury by slashing his throat. While the court merged counts I and II for the purposes of sentencing, defendant argues that the court should have vacated the conviction on count I as well. We agree. See *People v. Cole*, 172 Ill. 2d 85, 102 (1996) (a single entry will support only a single conviction, regardless of the number of occupants with respect to the home invasion statute). Accordingly, we vacate the conviction on count I.

■ Defendant also requests us to vacate the conviction on count V under the one-act, one-crime doctrine. Defendant was convicted of two counts of aggravated criminal sexual assault against M.J. by forcibly placing his penis into her vagina. Count V alleged that defendant committed the assault while displaying a dangerous weapon, and count VII alleged that defendant inflicted bodily harm to M.J. while committing the assault. Defendant maintains that the conviction for count V was based on the same incident of penile penetration as alleged in count VII, thereby violating the one-act, one-crime rule set forth in *King*, 66 Ill. 2d at 566. We agree.

Multiple convictions cannot be carved from the same physical act. *King*, 66 Ill. 2d at 566. Thus, defendant cannot be convicted of two counts of aggravated criminal sexual assault where there was only one act of sexual penetration. *People v. Daniels*, 331 Ill. App. 3d 380, 386 (2002). The State concedes that there was only one incident involving the penile penetration of M.J. Therefore, we vacate the conviction of aggravated criminal sexual assault based upon the display of a dangerous weapon. See *Daniels*, 331 Ill. App. 3d at 386-87 (between two convictions for aggravated criminal sexual assault predicated upon one act of sexual penetration, conviction that has as its aggravating factor the display of a dangerous weapon is less serious than conviction based upon causing bodily harm). Accordingly, defendant's conviction on count V is vacated.

■ Last, defendant requests this court to vacate the conviction on count IV, based upon *People v. Crespo*, 203 Ill. 2d 335 (2001) (supplemental opinion filed March 31, 2003). Defendant was convicted of two counts of aggravated criminal sexual assault based upon defendant placing his penis in M.J.'s mouth by the use of force. Count IV alleged that defendant displayed a dangerous weapon while committing the offense, and count VI alleged that defendant caused M.J. bodily harm while committing the offense. Defendant does not dispute that there were multiple instances of forcible sex in this case. As a result, defendant is not arguing a violation of the one-act, one-crime rule set forth in *King*. Rather, defendant maintains that the conviction on count IV should be vacated because counts IV and VI did not distinguish the acts in a way that notified him that the State was seeking separate convictions rather than merely relating alternative theories of liability for one act.

Defendant's argument is based on *Crespo*, a recent decision by our supreme court. In *Crespo*, the defendant stabbed the victim three times, and each stabbing could have been the basis of a separate conviction. *Crespo*, 203 Ill. 2d at 344. However, the counts as charged did not differentiate between the separate stab wounds, but merely of-

fered different theories of criminal culpability. *Crespo*, 203 Ill. 2d at 342. In reiterating a defendant's fundamental right to be informed of the nature and cause of the criminal accusations against him so that he may prepare a defense, the court noted that the defendant would not have known until the cause was on appeal that the State considered each of the separate stabs to be a separate offense. *Crespo*, 203 Ill. 2d at 345. Accordingly, the court held that an indictment must indicate that the State intends to treat the conduct of a defendant as multiple acts in order for multiple convictions to be sustained. *Crespo*, 203 Ill. 2d at 345.

In a subsequent case, the Appellate Court, Fourth District, held that three counts of aggravated criminal sexual assault were sufficiently distinguished to sustain separate convictions and consecutive sentencing for each count. *People v. Olivieri*, 334 Ill. App. 3d 311, 318 (2002). However, the *Olivieri* majority noted that the defendant was notified prior to trial at a preliminary hearing that the State intended to seek multiple convictions. *Olivieri*, 334 Ill. App. 3d at 315.

Defendant urges us to reject the reasoning in *Olivieri* and determine that counts IV and VI in this case did not distinguish the acts in a way that apprised him that separate convictions rather than alternative theories were intended by the State. The State confesses error on this point. We agree. Like *Crespo* and unlike *Olivieri*, defendant was not apprised, prior to trial, that the State intended to prosecute him for separate acts.

For the above reasons, we vacate defendant's convictions on counts I, IV, and V. Of defendant's remaining convictions, they are to be counted as "one conviction" for the purposes of sentencing under the habitual criminal statute. As a result, we reverse the trial court's judgment imposing seven consecutive life sentences and sentence defendant to one term of life imprisonment based upon the most serious conviction, of attempted first degree murder.

For the foregoing reasons, we affirm in part, reverse in part, and vacate in part the judgment of the circuit court of Kane County.

Affirmed in part, reversed in part, and vacated in part.

JUSTICE GILLERAN JOHNSON, specially concurring:

Although I agree with the result reached by my colleague, I write separately to explain my view that, under the unique facts of this case, the defendant's conviction of aggravated criminal sexual assault under count IV of the indictment should be vacated.

In *Crespo*, our supreme court held that in order to sustain multiple convictions, the State must inform the defendant that it intends to

treat his or her conduct as separate acts. *Crespo*, 203 Ill. 2d at 344. Although the *Crespo* court stated that the notice to the defendant should be through the indictments, it did not foreclose notice in some other manner prior to trial. *Crespo*, 203 Ill. 2d at 343. Furthermore, the *Crespo* court placed great emphasis on presenting separate acts to the jury. *Crespo*, 203 Ill. 2d at 344.

In this case, the State conceded, both in its appellate brief and during oral argument, that the defendant here was not sufficiently informed that the State was charging him with two separate acts of forcible oral sex. In the State's view, it was not unreasonable for the defendant to believe that he was being charged with the same crime, based on alternate theories. In making its confession of error, the State admits that it did not properly argue separate acts to the jury and concedes that the trial court did not sufficiently instruct the jury that the charges were based on separate acts. I agree. The defendant here was charged with two counts of forcible oral sex, under counts IV and V of the indictment. However, during its closing argument, the State failed to explain that the defendant's acts were separate. Instead of arguing that the defendant committed two separate acts of forcible oral sex, the State argued that it was proceeding on "two different theories." The State further argued that "the defendant committed *an* act of sexual penetration, both by entering [the victim's] mouth with his penis, as well as by entering her vagina with his penis." Finally, the trial court instructed the jury as if the State were proceeding on alternate theories. The trial court explained to the jury that the defendant was charged "in different ways" with the offense of aggravated sexual assault.

In conclusion, I believe that the State did not properly represent to the jury that the defendant was being charged with two separate acts of forcible oral sex. Furthermore, the trial court did not sufficiently instruct the jury that the defendant was being charged with separate acts of forcible oral sex. Accordingly, as the lesser count of the two, I agree with my colleague that the defendant's conviction of aggravated criminal sexual assault based on count IV of the indictment must be vacated.

JUSTICE BOWMAN, dissenting in part:

I respectfully dissent. Specifically, I disagree with the conclusion that defendant's conviction of aggravated criminal sexual assault (count IV) should be vacated. With respect to the indictment, I believe that defendant was on notice of the need to defend against multiple charges of aggravated criminal sexual assault. In all, defendant was charged with four counts of aggravated criminal sexual assault. While

two of the counts alleged vaginal penetration, the other two alleged oral penetration. Count IV alleged that defendant, while displaying a knife, forcibly placed his penis in M.J.'s mouth. Count VI alleged that defendant caused her bodily harm by forcibly placing his penis in her mouth. Unlike the charges in *Crespo* and *Olivieri*, the aggravated criminal sexual assault charges here specifically referenced the sexual penetration. Based on these facts, it is my opinion that the charging instrument was sufficiently specific to put defendant on notice that he was being charged with two separate offenses of forcible oral sex. Consequently, I believe that the indictment in this case satisfied *Crespo*, and I disagree with Justice McLaren's conclusion that defendant here did not have notice prior to trial that he was being charged with multiple offenses.

In addition, I do not believe that a detailed notice of a defendant's specific acts prior to trial is the only manner in which to satisfy *Crespo*'s due process requirement. Justice McLaren appears to place great weight on the preliminary hearing in *Olivieri* to support his position that *Crespo* requires that a defendant have notice *prior to trial* that the State is seeking separate convictions. In his view, there was no preliminary hearing in this case and *Olivieri* is therefore distinguishable on that basis alone. However, I believe that this interpretation ignores the analysis in both *Crespo* and *Olivieri* discussing the State's treatment of the crime at trial.

In my opinion, *Crespo* allows consideration of the State's treatment of the crime at trial. In *Crespo*, it is clear that the court based its decision on the indictments as well as the way in which the crime was argued to the jury. *Crespo*, 203 Ill. 2d at 344. Similarly, in *Olivieri*, the court considered the charging instruments and the preliminary hearing, as well as the State's presentation of evidence to the jury, in finding that the defendant had fair notice that the State was prosecuting for three separate acts. Accordingly, in determining whether a defendant was informed of the nature and cause of the criminal accusations against him, it is appropriate to consider the indictments, as well as the State's treatment of the crime both before and during trial.

Here, I believe that the State's treatment of the crime at trial informed defendant that he was being prosecuted for separate acts. First, in the opening statement, the State stated that defendant "pull[ed] out his penis and he force[d] [M.J.] to give him oral sex." The State continued that defendant took M.J. to the kitchen, where he grabbed two beers, and then returned to the bedroom. "And then he goes to [M.J.] again and says, make me come, and again he takes out his penis and again forces it into [M.J.'s] mouth. But this time she throws up and she throws up all over his shorts."

Second, in its closing argument, the State treated defendant's conduct as separate acts. For example, the prosecutor stated the following:

"The last *offenses* I will talk about are those of Aggravated Criminal Sexual Assault, and once again, there are four counts of Aggravated Criminal Sexual Assault; and in relation to those four counts, there are two different theories and I will also talk about the verdict forms that go with the theories.

\*\*\*

Clearly—I talked about this already and I apologize if I keep repeating myself—threats were issued from the point that he put the cord around [D.J.'s] wrists and put the pillow case over his head. That's when he began demanding [M.J.] to perform oral sex on him, and that's when the defendant began saying, I am going to kill you if you don't—kill your husband if you don't do it, I am going to kill you, I am going to kill your children, I am going to have sex with your children.

\*\*\*

In this case there are two different types of sexual penetration that are charged: one, penis to mouth; and, two, penis to vagina. The evidence here is overwhelming that the defendant, while displaying the knife, repeatedly forced [M.J.] to perform oral sex on him. She started to cry initially. That's when he started to threaten. He, numerous times, placed his penis in her mouth; even on one occasion causing her to throw up, causing her to vomit in his shorts. The evidence is clear and overwhelming that the defendant committed *acts* of sexual penetration, in that he placed his penis in her mouth while displaying a weapon." (Emphasis added.)

In support of her position, Justice Gilleran Johnson isolates individual comments made by the State that are not reflective of the overall treatment of defendant's conduct at trial. When viewed in its entirety, the State's closing argument clearly treated defendant's conduct as separate acts.

Finally, the jury was carefully instructed by the trial court regarding all four counts of aggravated criminal sexual assault. Specifically, the verdict form submitted to the jury with respect to counts IV and VI stated as follows:

"We, the jury, find the [defendant] not guilty of Aggravated Criminal Sexual Assault, displaying dangerous weapon and placed penis in the mouth of [M.J.]; we, the jury, find the [defendant] guilty of Aggravated Criminal Sexual Assault, displaying dangerous weapon and placed penis in mouth of [M.J.].

\*\*\*

We, the jury find the [defendant] not guilty of Aggravated

Criminal Sexual Assault, caused bodily harm to [M.J] and placed penis in mouth of [M.J.]; and we, the jury, find the [defendant] guilty of Aggravated Criminal Sexual Assault, caused bodily harm to [M.J.] and placed penis in mouth of [M.J.]."

Thus, I disagree with Justice Gilleran Johnson's conclusion that the trial court did not sufficiently instruct the jury that defendant was being charged with two separate acts of forcible oral sex. Moreover, as mentioned previously, isolating individual statements made by the State or the trial court results in an inaccurate view of the overall treatment of defendant's conduct at trial.

In sum, both counts IV and VI specifically referenced the sexual penetration, and the State presented and argued the case to the jury as separate acts of forcible oral sex. For these reasons, I believe that defendant was informed that the acts were being treated as separate offenses, and I would affirm the convictions on both counts.