Docket No. 98333.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
NATHAN PALMER, Appellee.

*Opinion filed January 20, 2006.*

JUSTICE FITZGERALD delivered the judgment of the court, with opinion.

Justices Freeman, McMorrow, and Kilbride concurred in the judgment and opinion.

Justice Garman concurred in part and dissented in part, with opinion, joined by Chief Justice Thomas and Justice Karmeier.

## OPINION

A jury convicted defendant, Nathan Palmer, of eight Class X offenses for actions committed over an approximately two-hour period in the home of M.J. and D.J. on Sunday afternoon July 18, 1999. After finding that defendant had received two prior serious felony convictions within a 20-year period, the circuit court of Kane

County adjudged defendant an habitual criminal. The court imposed seven natural-life sentences pursuant to the Habitual Criminal Act (Act) (720 ILCS 5/33B (West 2000)). Citing section 5–8–4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5–8–4(a) (West 2000)), the trial court also ordered defendant to serve those sentences consecutively. The appellate court vacated three of the eight convictions, and held that the Act transformed the remaining five convictions into only "one conviction" requiring one natural-life sentence, absolving the need for consecutive sentences. 346 Ill. App. 3d 942, 949-50.

In this case, we determine the proper sentence for a person who committed multiple simultaneous offenses and was then adjudged an habitual criminal. We hold that the trial court did not err in imposing a natural-life sentence on each conviction, but erred in ordering defendant to serve those sentences consecutively. We therefore reverse in part and affirm in part.

BACKGROUND

On Sunday July 18, 1999, M.J. and her husband, D.J., were at home in their two bedroom apartment with their four-year-old and two-year-old daughters. At approximately 12:30 p.m., M.J. was cleaning the house and D.J. was watching television, while the girls were playing. M.J. heard a knock on the door and looked through the peep hole. She saw the defendant standing outside with a newspaper in his hand. She told D.J. a man was standing at the door, and she opened the door. M.J. observed that defendant was bald, weighed about 250 to 300 pounds, stood 5 foot 11 inches, with green eyes. Defendant asked if they wanted to buy a newspaper for fifty cents. They declined, but defendant entered the apartment without permission, became upset, and dropped the newspaper. He pulled out a steak knife with a pink handle from his shorts and held it to M.J.'s throat. Over an approximately two-hour period, defendant committed various crimes. Defendant stole cash and M.J.'s wedding ring, struck M.J. in the head, forced M.J. to perform oral sex on him, forced M.J. to perform oral sex on her husband while defendant watched, penetrated M.J. with his penis and fingers, bound D.J. by the wrists and placed an electrical cord around D.J.'s neck, and slit D.J.'s throat with the steak knife, just missing the jugular vein. Defendant did not

follow through on his threats to have forcible intercourse with the four-year-old daughter.

An amended indictment filed on March 22, 2000, charged defendant with eight Class X felony offenses. Count I alleged the offense of home invasion (720 ILCS 5/12−11 (West 2000)) in that defendant entered the dwelling place of M.J. and used force or threatened to use force while armed with a dangerous weapon. Count II alleged the offense of home invasion (720 ILCS 5/12−11 (2000)) in that defendant entered the dwelling place of D.J. and intentionally caused him injury by slashing his throat. Count III alleged the offense of attempted first degree murder (720 ILCS 5/8−4(a), 9−1(a)(1) (West 2000)) in that defendant intended to kill D.J. by strangling him with an electrical cord and slashing his throat. Counts IV and V alleged the offenses of aggravated criminal sexual assault (720 ILCS 5/12−13(a)(1), 12−14(a)(1) (West 2000)) in that defendant, while displaying a knife, placed his penis in the mouth and vagina of M.J. by use of force. Counts VI and VII alleged aggravated criminal sexual assault (720 ILCS 5/12−14(a)(2) (West 2000)) in that defendant caused bodily harm to M.J. by placing his penis in her mouth and vagina. Count VIII alleged armed robbery (720 ILCS 5/18−2(a) (West 2000)) in that defendant, while armed with a knife, took cash and a ring from M.J. by the use of force or by threatening the use of force. A jury trial was held and, at the close of evidence, the jury found defendant guilty on all counts.

At sentencing, the trial court ruled that, for purposes of sentencing, the home invasion counts merged because the charges arose from the same acts. The State also filed a petition to have defendant adjudged an habitual criminal. See 720 ILCS 5/33B−1 (West 2000). The trial court granted the petition upon defendant's stipulation that he met the statutory requirements, having been convicted of criminal sexual assault in case number 87 CR 001360 on October 14, 1987, and convicted of aggravated criminal sexual assault, in case number 92 CR 2856601, on March 25, 1994. The trial court imposed a natural-life sentence on each remaining count pursuant to the Act. 720 ILCS 5/33B−1(e) (West2000). The trial court then found that the consecutive sentencing provision of section 5−8−4(a) of the Code (730 ILCS 5/5−8−4(a) (West 2002)) required that defendant serve seven consecutive sentences of natural-life

˘3˘

imprisonment. The trial court denied defendant's posttrial motion for a new trial and motion to declare the Act unconstitutional.

On appeal, after the State confessed error, the appellate court vacated the convictions on counts I and V based on the one-act, one-crime doctrine. 346 Ill. App. 3d at 953. The appellate court also vacated count IV based on *People v. Crespo*, 203 Ill. 2d 335 (2001). 346 Ill. App. 3d at 953.[1] On the remaining five convictions, the appellate court counted them as only "one conviction" for purposes of sentencing under the Act. 346 Ill. App. 3d at 953. Because there was only "one conviction," the court further held that the trial court improperly sentenced defendant to consecutive natural-life sentences pursuant to section 5–8–4(a) of the Code (730 ILCS 5/5–8–4(a) (West 2002)). 346 Ill. App. 3d at 950. The appellate court therefore reversed the trial court's judgment imposing seven consecutive natural-life sentences and sentenced defendant to one term of natural-life imprisonment based upon the most serious conviction, attempted first degree murder. 346 Ill. App. 3d at 953. We granted the State's petition for leave to appeal. 177 Ill. 2d R. 315(a). As this case presents only issues of statutory interpretation, which are questions of law, our review is *de novo*. *People v. Harris*, 203 Ill. 2d 111, 116 (2003).

## ANALYSIS

We note defendant did not raise his present sentencing issues at his sentencing hearing or in a posttrial motion. However, we agree

---

[1]Justice Gilleran Johnson specially concurred with the result of the vacated conviction on count IV. 346 Ill. App. 3d at 953-54 (Gilleran Johnson, J., specially concurring). Justice Bowman dissented in part, stating that count IV should not have been vacated. 346 Ill. App. 3d at 957 (Bowman, J., concurring in part and dissenting in part). This ruling is not an issue on appeal.

with both the State and defendant that we may review defendant's claim that the trial court's sentence was void. A sentence imposed without statutory authority is not subject to defendant's forfeiture. *Harris*, 203 Ill. 2d at 118-19, citing *People v. Arna*, 168 Ill. 2d 107 (1995). It is well established that a sentencing judge cannot impose a penalty not otherwise allowed by the sentencing statute in question. *Harris*, 203 Ill. 2d at 116, quoting *People v. Wooters*, 188 Ill. 2d 500, 506 n.1 (1999). We therefore address three main questions: (1) whether the appellate court correctly found that the Act transforms defendant's five convictions into just one conviction, (2) if not, whether the trial court correctly imposed a natural-life sentence on each conviction, and (3) if so, whether the trial court properly imposed consecutive natural-life sentences pursuant to the Code.

## I

In general, the Habitual Criminal Act mandates the imposition of a natural-life sentence on a defendant convicted of three temporally separate Class X offenses, or other eligible serious felonies, within a 20-year period. 720 ILCS 5/33B–1 *et seq.* (West 2002). At issue here is section 33B–1 of the Act, which provides:

> "§ 33B–1. (a) Every person who has been twice convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping or first degree murder, and is thereafter convicted of a Class X felony, criminal sexual assault or first degree murder, committed after the 2 prior convictions, shall be adjudged an habitual criminal.
>
> (b) The 2 prior convictions need not have been for the same offense.
>
> (c) Any convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this Section as one conviction.
>
> (d) This Article shall not apply unless each of the following requirements are satisfied:
>
> (1) the third offense was committed after the effective date of this Act;

(2) the third offense was committed within 20 years of the date that judgment was entered on the first conviction, provided, however, that time spent in custody shall not be counted;

(3) the third offense was committed after conviction on the second offense;

(4) the second offense was committed after conviction on the first offense.

(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment." 720 ILCS 5/33B–1 (West 2002).

The State contends the appellate court erred by holding that the phrase "any convictions" in subsection (c) of the Act (720 ILCS 5/33B–1(c) (West 2002)), transforms defendant's five convictions into only one for purposes of sentencing. According to the State, the appellate court misunderstood how the Habitual Criminal Act works, in that the Act did not create a new, independent offense. The defendant's argument is consistent with the appellate court's reasoning in that subsection (c) of the Act (720 ILCS 5/33B–1(c) (West 2002)) requires that "any convictions" which are connected with the same transaction be counted as a single conviction, thus requiring a single natural-life sentence.

In construing the meaning of a statute, the primary objective of this court is to ascertain and give effect to the intention of the legislature. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 503-04 (2000). Accordingly, in determining the intent of the General Assembly, we may properly consider not only the language of the statute, but also the purpose and necessity for the law, the evils sought to be remedied, and goals to be achieved. *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2002). The language of the statute must be afforded its plain, ordinary, and popularly understood meaning. *In re Detention of Lieberman*, 201 Ill. 2d at 308 (2000). This court will not depart from the plain language of a statute by reading into it exceptions, limitations or conditions that conflict with the express legislative intent. *Petersen v. Wallach*, 198 Ill. 2d 439, 446 (2002). All provisions of a statutory enactment are viewed as a whole. *Michigan Avenue National Bank*, 191 Ill. 2d at 504. Each word, clause and sentence of the statute, if possible, must be given

˘6˘

reasonable meaning and not rendered superfluous. *Michigan Avenue National Bank*, 191 Ill. 2d at 504. In construing a statute, we presume that the General Assembly, in its enactment of legislation, did not intend absurdity, inconvenience or injustice. *Michigan Avenue National Bank*, 191 Ill. 2d at 504.

The Habitual Criminal Act does not create a new offense, but only enhances the sentence on the offense of which an habitual criminal has been most recently convicted. *People v. Dunigan*, 165 Ill. 2d 235, 242 (1995).[2] In *Dunigan*, the defendant, who had two prior felony rape convictions, had committed the offense of criminal sexual assault, making him eligible to be adjudged an habitual criminal. In rejecting defendant's argument that a defendant adjudged an habitual criminal is found guilty of an independent criminal offense, namely, being an "habitual criminal," we explained:

> "The United States Supreme Court and our court have repeatedly recognized, however, that habitual criminal statutes do not define a new or independent criminal offense. [Citations.] Rather, such statutes simply prescribe the circumstances under which a defendant found guilty of a specific crime may be more severely punished because that defendant has a history of prior convictions. The punishment imposed under the Act is for the most recent offense only. The penalty is made heavier because the person convicted is a habitual criminal. The Act does not punish a defendant again for his prior felony convictions, nor are those convictions elements of the most recent felony offense. Instead, they

---

[2]We note that this proposition does not run afoul of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), where the Court held that any fact other than a prior conviction sufficient to raise the limit of the possible sentence must be found by a jury, absent a waiver by the defendant. The *Apprendi* court left undisturbed the holding in *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), which drew an exception to the *Apprendi* line of cases for judicial fact-finding that concerns a defendant's prior convictions. *Apprendi*, 530 U.S. at 487-90, 147 L. Ed. 2d at 453-55, 120 S. Ct. at 2361-62. We note further that defendant's prior convictions were stipulated to by the defendant himself, and would have certainly been proved beyond a reasonable doubt.

simply aggravate or enhance the penalty imposed for the third and most recent offense. [Citations.]" *Dunigan*, 165 Ill. 2d at 242.

In creating the Act, the "legislature devised a separate sentencing scheme for criminal defendants who have demonstrated a propensity to commit violent crimes." *Dunigan*, 165 Ill. 2d at 243. The Act may be invoked only after defendant has demonstrated that two convictions and terms of imprisonment do not dissuade him from a life of crime. We stated, "[T]he Act unquestionably represents a careful legislative consideration of both the seriousness of the offense and the rehabilitative potential of offenders subject to its terms." *Dunigan*, 165 Ill. 2d at 246-47. *Dunigan*, however, did not directly determine the sentencing of an adjudged habitual criminal where, as here, a defendant's third serious felony offense is but one of several offenses resulting from or connected with the same transaction.

Here, defendant's argument that subsection (c) of the Act transforms defendant's five convictions into one is only a slight variation of the argument rejected in *Dunigan*. The Act is a sentencing statute and does not create an independent criminal offense. Therefore, there is no "conviction" by terms of the Act. *Dunigan*, 165 Ill. 2d at 242. Under the Act, a criminal is "adjudged" an habitual criminal rather than "convicted" as an habitual criminal. 720 ILCS 5/33B–1(a) (West 2002). Hence, because the Act cannot create a conviction, the Act has no ability to replace lawfully entered convictions which are the result of proof beyond a reasonable doubt for the offenses in question.

Rather, a review of the Act demonstrates that the language at issue in subsection (c) is only a counting mechanism to determine when a particular defendant has reached the status of an habitual criminal. 720 ILCS 5/33B–1(c) (West 2002) ("Any convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this Section as one conviction"). Subsection (c)'s meaning is apparent from a review of subsections (a), (b), and (d) of section 33B–1 of the Act. Turning to subsection (a), the Act speaks in terms of a tally of offenses, the summation of which provides eligibility as an habitual criminal:

"Every person who has been *twice convicted* in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class X felony, criminal sexual assault, aggravated kidnapping or first degree murder, and is *thereafter convicted of a* Class X felony, criminal sexual assault or first degree murder, committed after the *2 prior convictions*, shall be adjudged an habitual criminal." (Emphases added.) 720 ILCS 5/33B‒1(a) (West 2002).

The Act states that defendant must have been "twice convicted" of an offense or offenses. Then it speaks sequentially of one further offense by using the article "a." Thus, the third conviction must be a conviction for "*a* Class X felony, criminal sexual assault or first degree murder" which is "committed after the 2 prior convictions." (Emphasis added.) 720 ILCS 5/33B‒1(a) (West 2002). A defendant has already met the requirements for an habitual criminal under the Act by the third offense. It is therefore unnecessary to mention a fourth or fifth offense in a series of offenses because any two prior convictions may also enhance the sentences on the fourth and fifth offenses.

Subsection (b) also demonstrates the Act's function as a counting mechanism. Subsection (b) provides, "The 2 prior convictions need not have been for the same offense." 720 ILCS 5/33B‒1(b) (West 2002). It is unnecessary to speak of further convictions because it is the third offense to reach the habitual criminal status which is key. Sentences on all subsequent convictions may be enhanced by any two temporally distinct prior convictions.

The Act's focus on the counting of offenses until a defendant reaches habitual criminal status finds support in the additional language of the Act in subsection (d), which provides:

"(d) This Article *shall not apply* unless each of the following requirements are satisfied:

(1) the *third offense* was committed after the effective date of this Act;

(2) the *third offense* was committed within 20 years of the date that judgment was entered on the first conviction, provided, however, that time spent in custody shall not be counted;

˘9˘

(3) the *third offense* was committed after conviction on the second offense;

(4) the *second offense* was committed after conviction on the *first offense*." (Emphases added.) 720 ILCS 5/33B−1(d) (West 2002).

Thus, within the plain language of section (d), the article does not apply until defendant commits the *third offense*. A further tally beyond the third offense is unnecessary because defendant has reached the status of an habitual criminal.

Returning to subsection (c), it provides, "Any convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, *shall be counted for the purposes of this Section* as one conviction." (Emphasis added.) 720 ILCS 5/33B−1(c) (West 2002). This subsection does not erase the offense which results in liability in the form of a conviction, by transforming five convictions into one, regardless of the sentence imposed. Rather, the provision provides that the mechanism is "for the purposes of this Section" (720 ILCS 5/33B−1(c) (West 2000)), and the purpose of the section is to calculate the sum which results in defendant's status as an habitual criminal. This status requires an enhanced sentence in accordance with the legislative determination that defendant may not be rehabilitated, such that societal protection in the form of permanent removal of defendant from society is necessary. The sum does not result in a new conviction, but in an enhanced sentence on any of defendant's convictions after he has been adjudged an habitual criminal.

Because the Act does not create an independent "conviction," the parties' arguments over whether the definition of "conviction" includes a sentence is beside the point. Instead, the word "conviction" is placed within the context of the entire Act, a sentencing statute, and must be construed accordingly.

This holding is in line with the outcomes of numerous cases. We note that in each case, unlike the appellate court in the present matter, the court did not merge the most recent convictions into "one conviction" by terms of the Act, regardless of the sentence imposed. Rather, a sentence was imposed, without effect upon the number of convictions. See *People v. Robinson*, 167 Ill. 2d 53 (1995) (defendant convicted of armed robbery and armed violence and sentenced to one

sentence of natural-life imprisonment); *People v. Henderson*, 343 Ill. App. 3d 1108 (2003) (defendant convicted in 1983 of rape and deviate sexual assault, but only given one natural-life sentence); *People v. Watson*, 338 Ill. App. 3d 765 (2003) (defendant convicted of aggravated criminal sexual assault and aggravated kidnapping, but sentenced to only one natural-life sentence); *People v. Madison*, 334 Ill. App. 3d 680 (2002) (defendant sentenced for committing the two attempted murders and the armed robbery with three apparently concurrent natural-life sentences); *People v. Pickens*, 323 Ill. App. 3d 429, 432 (2001) (defendant convicted of armed robbery, two counts of aggravated battery with a firearm, and two counts of attempted murder, but opinion does not consistently describe whether more than one life sentence was imposed); *People v. Norris*, 303 Ill. App. 3d 163 (1999) (defendant received one sentence of natural-life imprisonment on convictions for armed robbery and armed violence and also sentenced to a concurrent five-year sentence for aggravated battery); *People v. Barnwell*, 285 Ill. App. 3d 981 (1996) (defendant convicted of aggravated criminal sexual assault, kidnapping and robbery and sentenced to one natural-life sentence); *People v. Shriner*, 262 Ill. App. 3d 10 (1994) (defendant convicted of home invasion, two counts of armed robbery and two counts of unlawful restraint and given one sentence of natural-life imprisonment on the home invasion and armed robbery convictions); *People v. Murdock*, 259 Ill. App. 3d 1014 (1994) (defendant sentenced to one natural-life sentence based on murder and robbery convictions).

Thus, the appellate court erred in holding that the remaining convictions are to be transformed into "one conviction" for purposes of sentencing under the Act. As we shall discuss shortly, however, that error can hardly affect the actual sentence which defendant shall serve in prison.

## II

We now determine the proper sentence to be imposed on defendant's five Class X felony convictions. The State contends that the provisions of the Act do not prohibit the imposition of more than one natural-life sentence where a defendant is found guilty of multiple Class X felonies committed during a single course of conduct. We agree, as several provisions of the Code dictate that it is

not error to sentence defendant on each conviction. First, the Code provides that "[e]xcept as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations." 730 ILCS 5/5–8–1(a) (West 2002). Subsection (a)(2) provides one of these limitations, stating that a person adjudged an habitual criminal under article 33B shall be sentenced to natural-life imprisonment. 730 ILCS 5/5–8–1(a)(2) (West 2002). Second, the "disposition" section of the Code, section 5–5–3, provides, in pertinent part, "Every person convicted of an offense shall be sentenced as provided in this Section." 730 ILCS 5/5–5–3 (a) (West 2002). The section further provides that when a defendant is adjudged an habitual criminal under article 33B of the Criminal Code of 1961, the court shall sentence defendant to a term of natural-life imprisonment. 730 ILCS 5/5–5–3(c)(7) (West 2002). Finally, the Act itself provides that "(e) Except when the death penalty is imposed, anyone adjudged an habitual criminal shall be sentenced to life imprisonment." 720 ILCS 5/33B–1(e) (West 2002). Again, the Act and the Code do not prohibit sentencing on each conviction resulting from the same transaction as the third eligible conviction under the Act.

Hence, because defendant has been adjudged an habitual criminal, the Code and the Act set forth the enhanced sentence on each of his convictions: natural-life imprisonment. Therefore, the trial court did not err in sentencing defendant to natural-life imprisonment on each of defendant's convictions.

### III

We next consider the propriety of consecutive natural-life sentences without parole. The State argues the trial court correctly applied Code section 5–8–4(a) (730 ILCS 5/5–8–4(a) (West 2002)). We disagree, as we find this result is contrary to the legislature's intent as to both the Act (720 ILCS 5/33B–1 (West 2002)) and the Code.

We recognized in *Dunigan* that "the legislature devised a separate sentencing scheme for criminal defendants who have demonstrated a propensity to commit violent crimes." *Dunigan*, 165 Ill. 2d at 243. Moreover,

"The legislature obviously considered the seriousness of the offense when it enacted the Act, which applies only to Class X felonies, first degree murder and criminal sexual assault, offenses recognized to be particularly violent and dangerous to society. The legislature also weighed the rehabilitative potential of offenders by limiting the Act to those offenders who have a third serious felony conviction within a prescribed period of time. *** The Act may be invoked only after a defendant has twice demonstrated that conviction and imprisonment do not deter him from a life of crime. Thus, the Act unquestionably represents a careful legislative consideration of both the seriousness of the offense and the rehabilitative potential of offenders subject to its terms." *Dunigan*, 165 Ill. 2d at 246-47.

We see no reason to depart from the legislative intent we recognized in *Dunigan* that the Act is a "separate sentencing scheme" merely because defendant has committed multiple serious felonies simultaneous to his "third offense." This is consistent with the series of cases cited earlier which adjudged the defendants habitual criminals, but did not also apply the consecutive sentencing provision of the Code. See *Robinson*, 167 Ill. 2d 53; *Henderson*, 343 Ill. App. 3d 1108; *Watson*, 338 Ill. App. 3d 765; *Madison*, 334 Ill. App. 3d 680; *Pickens*, 323 Ill. App. 3d 429; *Norris*, 303 Ill. App. 3d 163; *Barnwell*, 285 Ill. App. 3d 981; *Shriner*, 262 Ill. App. 3d 10 (1994); *Murdock*, 259 Ill. App. 3d 1014. The legislature has not made any amendments to the Act or the consecutive-sentencing law in response to these decisions.

Perhaps more importantly, we recognize the impossibility of serving consecutive natural-life sentences both according to natural law and within the plain meaning of the "consecutive" sentencing law, section 5–8–4(a). 730 ILCS 5/5–8–4(a) (West 2002). This impossibility is based on the critical distinction between a term of natural-life imprisonment and that of a term of years, namely, the particular sentences' potential for release of defendant. Unlike a term of years, the Code provides that "[n]o person serving a term of natural life imprisonment may be paroled or released except through executive clemency." 730 ILCS 5/3–3–3(d) (West 2002). With the unavailability of parole or release for defendant in mind, we examine

section 5–8–4(a) of the Code (730 ILCS 5/5–8–4(a) (West 2002)). It provides:

> "Concurrent and Consecutive Terms of Imprisonment.
>
> (a) When multiple sentences of imprisonment are imposed on a defendant at the same time, \*\*\* the sentences shall run concurrently or consecutively as determined by the court. \*\*\* The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless:
>
>> (i) one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury, \*\*\*
>
> \* \* \*
>
>> in which event the court shall enter sentences to run consecutively. 730 ILCS 5/5–8–4(a)(i) (West 2002).

All of the offenses committed by defendant were Class X offenses, and there is no dispute that defendant inflicted severe bodily injury to both M.J. and D.J. However, we hold that the section 5–8–4(a) does not apply here, based on the plain meaning of the word "consecutive."

The necessity of this holding is foreshadowed in our case law. Previous judicial pronouncements have failed to acknowledge the impossibility of serving and enforcing sentences consecutive to death or life without parole. For example, we have previously circumscribed the consecutive sentencing law where there has been a sentence of death. See, *e.g.*, *People v. Johnson*, 149 Ill. 2d 118 (1992); *People v. Terrell*, 132 Ill. 2d 178 (1989). In *Johnson*, we held that 30-year sentences for two attempted murder convictions could not run consecutive to the death sentence. *Johnson*, 149 Ill. 2d at 159. *Johnson* was based partly on *People v. Terrell*, 132 Ill. 2d 178 (1989), where we held that a death sentence is not to be considered a "term of imprisonment" within the meaning of the consecutive-sentencing statute (Ill. Rev. Stat. 1985, ch. 38, par. 1005–8–4(a)). Neither *Johnson* nor *Terrell*, however, mentioned the plain meaning of the word "consecutive" and the impossibility of serving any term of years consecutive to a death sentence.

˘14˘

This uneasiness is also exhibited in cases where a defendant has received consecutive natural-life sentences. We have previously not addressed this issue, although we have been presented cases with such sentences without challenge to their propriety. *People v. Caballero*, 206 Ill. 2d 65 (2002); *People v. Hendricks*, 137 Ill. 2d 31(1990). Only two appellate court cases have explicitly considered the issue, *People v. Hattery*, 183 Ill. App. 3d 785 (1989), and *People v. Bush*, 103 Ill. App. 3d 5 (1981). In *Hattery*, defendant was convicted and sentenced to three consecutive natural-life terms. The *Hattery* court discussed arguments set forth and rejected in other cases. The court noted *Bush*, which emphasized that consecutive natural-life sentences were necessary because of the nature of the offense and for the protection of society. *Hattery*, 183 Ill. App. 3d at 831. The court further cited *People v. Epps*, 143 Ill. App. 3d 636 (1986), which stated that sentences consecutive to a natural-life sentence were necessary to protect the public because the sentence could be of consequence should the legislature, the governor, or the appellate court act under appropriate authority to modify or commute a sentence. *Hattery*, 183 Ill. App. 3d at 832. Additionally cited in *Hattery* was the *Epps* court's statement that " 'the legislature has apparently recognized that consecutive sentences serve a useful purpose, for it has provided for mandatory consecutive sentences in certain circumstances' [citation] and has never imposed 'any limitation on the length or nature of the sentence involved.' " *Hattery*, 183 Ill. App. 3d at 831, quoting *Epps*, 143 Ill. App. 3d at 643. Further, the *Hattery* court noted that the legislature's latest amendments to section 5–8–4 have made no exceptions for terms of natural-life imprisonment. *Hattery*, 183 Ill. App. 3d at 831. Rather, it noted that the legislature failed to make any exceptions to consecutive natural-life terms in response to case law.

Notably, the *Hattery* court stopped short of explicitly endorsing any of these arguments or specifically identifying a useful purpose that consecutive natural-life sentences may have. Instead, the *Hattery* court concluded, "Thus, where case law supports upholding defendant's consecutive sentences, and action by neither the legislature nor our supreme court precludes them, and where the express terms of the governing statute do not preclude them, we cannot find that the trial court, having met all statutory requirements, erred in sentencing defendant \*\*\*." *Hattery*, 183 Ill. App. 3d at 832.

˘15˘

Like *Johnson* and *Terrell*, the court did not address the plain meaning of the word "consecutive" or the possibility of actually serving consecutive natural-life terms.

Here, we attempt to relieve this judicial uneasiness by acknowledging the elephant in the room and the plain meaning of the word "consecutive." "Consecutive" has been defined as "following esp. in a series: one right after the other often with small intervening intervals." Webster's Third New International Dictionary 482 (1993). Additionally, "consecutive sentences" are "[t]wo or more sentences of jail time to be served in sequence. • For example, if a defendant receives consecutive sentences of 20 years and five years, the total amount of jail time is 25 years." Black's Law Dictionary 1393-94 (8th ed. 2004). It belabors the obvious to state that at the conclusion of a defendant's first natural-life sentence, his life is over. Further, the Department of Corrections cannot enforce an order imposing another natural-life sentence consecutive to it. Thus, consecutive natural-life sentences cannot follow in a series right after one another. Defendant cannot serve two natural-life sentences in sequence, nor will the total amount of two or more natural-life sentences ever be more than defendant's one life. There is only one way in which a defendant can serve the sentences, with his one life. Therefore, the sentences may not be consecutive, but must be concurrent because concurrent sentences are sentences which operate simultaneously. Black's Law Dictionary 1393 (8th ed. 2004).

Moreover, the purpose of the consecutive sentencing statute is not furthered by consecutive natural-life sentences. "By enacting the mandatory consecutive sentencing provision of section 5–8–4(a), the legislature sought to punish the commission of triggering offenses more harshly than the commission of other crimes. [Citation.] This legislative intent would be defeated if the triggering and nontriggering offenses were treated in a like manner." *People v. Curry*, 178 Ill. 2d 509, 538 (1997). Here, the disparate treatment of triggering and nontriggering offenses is not at issue; therefore, our decision is consistent with *Curry*. Absent the death penalty, it is not possible to punish defendant more harshly. It is also clear that, by means of the Habitual Criminal Act, the legislature expressed the intent that habitual criminals, like defendant, are not capable of being rehabilitated, and should therefore be removed permanently from society. A consecutive natural-life sentence cannot advance that goal.

We also reject the additional arguments noted in *Hattery*. The first additional argument is "that the sentence could be of consequence should the legislature, the governor, or an appellate court act under appropriate authority to modify or commute a sentence." This argument is not only pure speculation as to the fate of defendant in this case, but it speculates as to the actions of all three branches of government without setting forth any reason why they may so act. Our reasoning is based on defendant's lack of any prospect for parole, the only certain fact. Second, the argument that the legislature did not change the consecutive sentencing law in light of *Hattery* and *Bush* is also unpersuasive. As we noted above, the legislature did not amend the Habitual Criminal Act in the cases cited above where the courts failed to impose multiple sentences of natural-life imprisonment or impose those sentences consecutively.

Finally, we acknowledge defendant's crimes warrant the harshest of penalties, other than death. Certainly, given the approximately two- hour period of violence endured by M.J., D.J., and their daughters, we cannot quibble with the fact that the "nature of the offense" that defendant has committed may have caused the perception that justice necessitates consecutive natural-life sentences. We simply believe the harshest of penalties is concurrent natural-life sentences. Calling it consecutive would add not one minute or one day to defendant's punishment. If it did, there would be every justification.

But there is a countervailing value in prohibiting the imposition of consecutive natural-life sentences which can never be carried out. Additionally, because defendant will serve no more or no less than the rest of his life in jail, if we affirm the trial court, the defendant will not be actually prejudiced. However, if we affirm the appellate court, the State also will not be actually prejudiced. This may explain the reticence of some previous courts to apply several natural-life sentences when they were able to do so, or even apply them consecutively. We explicitly find, as these aforementioned courts also did implicitly, that defendant's actual sentence is governed by the laws of nature, regardless of whether a trial judge imposes his sentence consecutively or concurrently. Because defendant may only serve these sentences concurrently, we reverse the circuit court's imposition of consecutive natural-life sentences on the five remaining convictions. Accordingly, under Supreme Court Rule 615(b)(4) (see

134 Ill. 2d R. 615(b)(4)), we change the defendant's sentence to five concurrent sentences of natural-life imprisonment.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the appellate court concerning the Habitual Criminal Act holding that the trial court erred in imposing natural-life sentences on each of defendant's remaining five convictions. We therefore affirm the circuit court's judgment on the five remaining convictions and natural-life sentences for each conviction. However, we reverse the circuit court's judgment that defendant served those sentences consecutively and we impose concurrent sentences in the exercise of our supervisory authority pursuant to Supreme Court Rule 615(b)(4).

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and reversed in part;*
*sentence modified.*

JUSTICE GARMAN, concurring in part and dissenting in part:

Because I conclude that section 5–8–4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5–8–4(a) (West 2002)) requires the imposition of consecutive life sentences when a conviction for multiple felonies triggers the operation of the Habitual Criminal Act (Act) (720 ILCS 5/33B–1 *et seq.* (West 2002)), I respectfully dissent in part.

The majority errs in relying on the "laws of nature" (slip op. at 17) rather than the laws established by our state legislature. This case concerns the interpretation of two of those laws: the Habitual Criminal Act (720 ILCS 5/33B–1 *et seq.* (West 2002)) and the sentencing provisions of the Unified Code of Corrections (730 ILCS 5/5–8–1 *et seq.* (West 2002)). The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. *People v. Whitney*, 188 Ill. 2d 91, 97 (1999). The language of a statute is the best means of determining legislative intent. *Whitney*, 188 Ill. 2d at 97. It is unnecessary to look beyond the

plain language of the statutes at issue to reach the proper result in this case.

The power to determine the appropriate punishment for criminal conduct rests with the legislature (*People v. Taylor*, 102 Ill. 2d 201, 205 (1984)), while "[t]he judiciary's discretion in fashioning a criminal sentence extends only as far as the parameters of the sentencing statute permit" (*People v. Wooters*, 188 Ill. 2d 500, 506 n.1 (1999)). Via the Unified Code of Corrections, the legislature has imposed specific requirements upon circuit courts with respect to the imposition of mandatory consecutive sentences, and the circuit court is responsible for enforcing these requirements and imposing the appropriate sentence. 730 ILCS 5/5−8−4 (West 2004); *People ex rel. Waller v. McKoski*, 195 Ill. 2d 393, 399−401 (2001).

In enacting and later amending section 5−8−4 of the Code, the legislature determined that the sentences for certain felonies shall be served consecutively:

> "Concurrent and Consecutive Terms of Imprisonment.
>
> (a) When multiple sentences of imprisonment are imposed on a defendant at the same time, *** the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless:
>
> > (i) one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury, ***
>
> > \* \* \*
>
> in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5−8−4(a)(i) (West 2002).

As this court has noted, these consecutive sentencing provisions are mandatory once the trial court has determined that the defendant's course of conduct qualifies. *People v. Harris*, 203 Ill. 2d 111, 114−15 (2003). The trial court in this case appropriately determined that the defendant's five Class X felonies and the severe bodily injury he inflicted upon M.J. and D.J. qualify the defendant for consecutive sentencing under section 5−8−4(a)(i). Thus, regardless of the duration

of the defendant's sentences, the trial court was required to order that he serve those sentences consecutively. Neither the trial court, nor this court, possesses the discretion to breach these statutory parameters requiring consecutive sentencing. See *Wooters*, 188 Ill. 2d at 506 n.1.

While section 5−8−4 determines that the defendant's five sentences must be served consecutively, the Habitual Criminal Act (720 ILCS 5/33B−1 *et seq.* (West 2002)) determines the duration of each sentence. Having been twice convicted of qualifying felonies, the defendant is a habitual criminal who must be sentenced to life imprisonment. 720 ILCS 5/33B−1 (West 2002). The majority correctly concludes that the Act requires a sentence of natural-life imprisonment for each of the defendant's convictions (slip op. at 11). It is these life sentences to which section 5−8−4(a) applies, requiring that they be served consecutively.

The Unified Code of Corrections subjects all felons, including habitual criminals, to its felony sentencing provisions. It acknowledges its relationship with the Habitual Criminal Act by noting that when a defendant has committed a felony and is adjudged a habitual criminal, the sentence for the felony will be a term of natural-life imprisonment:

> "Except as otherwise provided in the statute defining the offense, a sentence of imprisonment for a felony shall be a determinate sentence set by the court under this Section, according to the following limitations:
>
> * * *
>
> (2) for a person adjudged a habitual criminal under Article 33B of the Criminal Code of 1961, as amended [720 ILCS 5/33B−1 *et seq.* (West 2002)], the sentence shall be a term of natural life imprisonment[.]" 730 ILCS 5/5−8−1(a)(2) (West 2002).

The remainder of section 5−8−1 establishes the required sentences of imprisonment for the various classes of felonies. The Code then goes on to detail, in section 5−8−4(a), what happens when a defendant commits more than one of these felonies, causing a trial court to impose more than one of these sentences. 730 ILCS 5/5−8−4(a) (West 2002). Section 5−8−4 contains no indication that the habitual criminal life sentences recognized by section 5−8−1(a)(2)

˘20˘

are not subject to its provisions. Lacking an exemption, multiple life sentences are subject to section 5–8–4 in the same way as all other sentences detailed by section 5–8–1. Although the Habitual Criminal Act does, as the majority noted, establish a separate sentencing scheme (slip op. at 7), the reference to the Act in the Unified Code of Corrections reinforces the conclusion that the two schemes must be read together.

In imposing concurrent sentences, the majority notes that "Defendant cannot serve two natural-life sentences in sequence, nor will the total amount of two or more natural-life sentences ever be more than defendant's one life." Slip op. at 15. However, serving five consecutive life sentences is no more of a factual impossibility than serving five concurrent life sentences– after all, it is impossible for the defendant to serve five days' time in one 24-hour period. A scenario can be factually impossible, yet still be legally possible, as when a defendant is convicted of attempted theft even though his intended victim had nothing of value to steal. See 720 ILCS 5/5–8–4(b) (West 2004) (factual impossibility is no defense to a charge of attempt); *People v. Richardson*, 32 Ill. 2d 497, 502 (1965).

Here, the legislature has determined it is legally possible to serve consecutive natural-life sentences. The majority observes that "[c]alling it consecutive" will not actually increase or decrease the amount of time the defendant spends in jail (slip op. at 16), and thus its decision cannot prejudice either the defendant or the State (slip op. at 16). This reasoning, however, overlooks the significance of consecutive sentences to the public and to crime victims such as M.J. and D.J. The legislature has apparently determined that the imposition of consecutive life sentences is meaningful, if only symbolically, and this court must give effect to the legislature's clear intent. *McKoski*, 195 Ill. 2d at 399-401.

In addition, some disquietude remains under the surface of the majority's waves of assurances that consecutive life sentences would never be necessary to protect the public should one of the branches of government act to impact defendant's length of incarceration. The majority could easily dispel such concerns by simply following the sentencing framework enacted by the legislature.

Using the language of the Act (720 ILCS 5/33B–1 *et seq.* (West 2002)) and section 5–8–4(a) of the Code (730 ILCS 5/5–8–4(a) (West

2002)), the legislature has mandated the imposition of consecutive natural-life sentences when a conviction for multiple felonies triggers the operation of the Habitual Criminal Act. The trial court sentenced the defendant in accordance with the mandate of these statutes. I would affirm the judgment of the trial court as to the five convictions not vacated by the appellate court.

CHIEF JUSTICE THOMAS and JUSTICE KARMEIER join in this partial concurrence and partial dissent.