JUSTICE FREEMAN, specially concurring: I join fully in that section of today’s opinion which addresses the summary dismissal of defendant’s postconviction petition. Although I ultimately agree with the court’s resolution of the consecutive-sentencing issue, I do so for reasons other than those set forth in the court’s opinion. In challenging his consecutive sentences, defendant relies on People v. Palmer, 218 Ill. 2d 148 (2006). Palmer holds that because the Habitual Criminal Act is a separate sentencing scheme from the Unified Code of Corrections, the Unified Code’s consecutive-sentencing provision did not apply to the defendant, who had been sentenced to multiple natural-life sentences to be served consecutively. Palmer, 218 V. 2d at 163. The court, however, also went on to discuss the effect of the laws of nature on sentencing in general. Acknowledging the “impossibility of serving consecutive natural-life sentences both according to natural law and within the plain meaning of the ‘consecutive’ sentencing law, section 5 — 8—4(a)” of the Unified Code (emphases added) (Palmer, 218 Ill. 2d at 164), the court “explicitly” found that the “defendant’s actual sentence is governed by the laws of nature, regardless of whether a trial judge imposes his sentence consecutively or concurrently” (emphasis added) (Palmer, 218 Ill. 2d at 169). The sentencing issue in this case, as well as how the court goes about addressing it, requires that we reexamine Palmer. Although the Act does not operate here, defendant is right to recognize that the same “impossibility” acknowledged in Palmer occurs here: as a literal matter, it is impossible to serve a 10-year term consecutively to a sentence of natural life. This makes the court’s observation about defendant not being able to point to anything in this court’s jurisprudence to support his position (237 Ill. 2d at 505) false. The support rests squarely with the holding in Palmer that such sentences are governed by the laws of nature, which is the same part of Palmer that the court today repeatedly says was a “mistake” (237 Ill. 2d at 505, 507). “Mistake” is an understatement, but that is beside the point. The court goes to great lengths to salvage some of Palmer, but I do not see much worth in the effort. Palmer’s analysis was predicated on the fact that a majority of this court at that time believed that any construction of “consecutive” as used in section 5 — 8—4(a) had to begin with the recognition that it is theoretically impossible to serve multiple life sentences. See Palmer, 218 Ill. 2d at 165 (noting “[pjrevious judicial pronouncements have failed to acknowledge the impossibility of serving and enforcing sentences consecutive to death or life without parole”); see also People v. Ramey, 393 Ill. App. 3d 661, 670 (2009) (noting that Palmer discussed the “irrationality” of consecutive life sentences). This marked the first time, in dealing with the Unified Code, that this court had ever relied upon natural law to interpret the intent of the legislature. Indeed, until Palmer was announced, this court had never acknowledged, in any way, the impossibility of serving multiple life sentences, nor had it ever taken “judicial notice” of the fact that one has but one life to live. See People v. Hendricks, 137 Ill. 2d 31 (1990) (upholding four consecutive life sentences); People v. Caballero, 206 Ill. 2d 65 (2002) (holding the defendant’s death sentence was not constitutionally disproportionate to his codefendant’s three consecutive life sentences). Palmer changed that by holding that, in order for a sentence to be consistent with the laws of nature, multiple consecutive life sentences had to be served concurrently. Palmer, 218 Ill. 2d at 169-70; see also Ramey, 393 Ill. App. 3d 370 (noting that, “[according to our supreme court, sentences consecutive to a life sentence violate natural law and must be modified to be served concurrently”). After considering the appellate court cases which have followed in the wake of Palmer, I believe it was unwise for me to join in an opinion which elevated, in construing section 5 — 8—4(a), the theoretical impossibility of serving such sentences over both the fact that the General Assembly had specifically authorized such sentences and the legitimate public policy concerns that previous courts had identified to uphold those kinds of sentences (see People v. Hattery, 183 Ill. App. 3d 785 (1989); People v. Bush, 103 Ill. App. 3d 5 (1981)). I reach this conclusion for a number of reasons. First, Palmer’s entire construction of the word “consecutive,” as it is used in section 5 — 8—4(a), is based entirely on the fact that it is impossible to serve more than one life sentence. However, we overlooked the fact that just as it was self-evident to us that a defendant has but one life to live, so too was it evident to the legislature, which nevertheless chose to set punishments in such fashion, and in so doing indicated its intent in this area. Second, we failed to recognize how the expansiveness of our holding would affect the application of other sentencing provisions in the Unified Code. For example, in People v. Wuebbels, 396 Ill. App. 3d 763 (2009), the appellate court applied Palmer’s “laws of nature” analysis to conclude that section 5 — 8—4(f) of the Unified Code cannot be applied as written. Section 5 — 8—4(f) provides that “[a] sentence of an offender committed to the Department of Corrections at the time of the commission of the offense shall be served consecutive to the sentence under which he is held by the Department of Corrections.” 730 ILCS 5/5 — 8—4(f) (West 1996). Wuebbels concerned a defendant who, while serving a natural-life sentence, stabbed a prison guard with a spear. He was found guilty of attempted murder and possession of a weapon by a person in the custody of the Department of Corrections and received maximum sentences of 60 years for the attempted murder and 30 years for the weapon possession to run consecutively to each other and to the natural-life term. Based on Palmer, the appellate court modified the sentences to run concurrently because “a prison term of years cannot follow a natural-life sentence as the defendant’s Ufe is over at the end of the natural-life sentence.” Wuebbels, 396 Ill. App. 3d at 768. In so doing, the court criticized Palmer’s rationale. Wuebbels, 396 Ill. App. 3d at 768. Wuebbels demonstrates the problem inherent with Palmer’s recognition that criminal sentences are “governed by the laws of nature.” Palmer, 218 Ill. 2d at 169. After Palmer, all consecutive sentences imposed must be assessed by reviewing courts to ensure that they are consistent with the laws of nature. Should these laws of nature take into account the age or health of an individual? Take for example, a 55-year-old, terminally ill defendant convicted of murder, aggravated criminal sexual assault, and armed robbery. Assume that this hypothetical defendant receives 60 years for the murder, 30 years for the sexual assault, and 25 years for the armed robbery to run consecutively to each other. The consecutive sentences for the sexual assault and the armed robbery would be just as theoretically impossible to serve as multiple life sentences are. Natural law would thus preclude any number of sentences given their length and the relative health or age of the defendant. Does natural law require a judge to consult actuarial tables before imposing consecutive sentences? The holding in Palmer thus has the potential to wreak havoc with numerous sentencing provisions and thwarts the purposes behind differentiating between concurrent and consecutive sentencing. In light of the above, I believe that Palmer’s statutory construction analysis was badly reasoned and shortsighted from the start. Although the Act does establish a separate sentencing scheme from the Unified Code, the reference to the Act in the Unified Code demonstrates that the two schemes can be read together. And more importantly, the majority in Palmer — myself included — should never have invoked the “laws of nature” to decide what was a fairly routine case of statutory interpretation. By introducing the concept of natural law to consecutive and concurrent sentences in such expansive terms, we have, in essence, isolated our decision from legislative correction. In fact, we went so far in Palmer as to identify the harshest penalty short of death: “concurrent natural-life sentences.” Palmer, 218 Ill. 2d at 169. Thus, even if the General Assembly were to disagree and enact legislation to the contrary, as is its prerogative, that legislation could never trump a judicial ruling based on natural law. It is therefore not surprising that there has been no legislative action subsequent to Palmer that would call into question what Palmer said about legislative intent. Palmer's “explicit finding” (Palmer, 218 Ill. 2d at 164) that natural law governs criminal sentences places sentencing considerations for this case beyond the mere actions of the General Assembly, as I have already noted. Indeed, how can the General Assembly act in the face of such higher power? Nor is it surprising that the appellate court has faithfully applied Palmer. As that court noted in both Ramey and Wuebbels, it is bound to follow our decision until this court says otherwise. Today’s case provides the opportunity, our first since Palmer was filed, to do just that. Stare decisis is, as the United States Supreme Court has recognized, “essential to the respect accorded to the judgments of [a reviewing court] and to the stability of the law.” Lawrence v. Texas, 539 U.S. 558, 577, 156 L. Ed 2d 508, 525, 123 S. Ct. 2472, 2483 (2003). What it is not, however, is a “mechanical formula of adherence to the latest decision” (Helvering v. Hallock, 309 U.S. 106, 119, 84 L. Ed. 2d 604, 612, 60 S. Ct. 444, 451 (1940)), as the dissent would have it. The doctrine certainly does not compel us to follow a past decision when its rationale no longer withstands “careful analysis.” Lawrence, 539 U.S. at 577, 156 L. Ed. 2d at 525, 123 S. Ct. at 2483. I further acknowledge that prior decisions should not be overruled absent “good cause.” Moehle v. Chrysler Motors Corp., 93 Ill. 2d 299, 304 (1982). But whether the rationale in a case no longer withstands careful analysis or whether good cause exists for a departure from stare decisis in any given case is a question upon which reasonable minds may sometimes differ. In re Commitment of Simons, 213 Ill. 2d 523, 546 (2004) (Freeman, J., dissenting, joined by Kilbride, J.). Recently, this court has unanimously acknowledged that good cause exists when governing decisions are “badly reasoned.” People v. Colon, 225 Ill. 2d 125, 146 (2007). That description fits Palmer to a tee, and the case should be flatly overruled.