Docket No. 107503.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. SHAWN PETRENKO, Appellant.

*Opinion filed June 4, 2010.*

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Kilbride, Garman, and Karmeier concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion.

Justice Burke concurred in part and dissented in part, with opinion.

## OPINION

This case presents two issues: (1) whether the trial court erred in summarily dismissing defendant's *pro se* postconviction petition as frivolous and patently without merit, and (2) whether the imposition of a 10-year prison term consecutive to a natural-life prison term was void in this case.

## BACKGROUND

Following a jury trial, defendant, Shawn Petrenko, was convicted of one count of first degree murder (720 ILCS 5/9–1 (West 2000)) and one count of residential burglary (720 ILCS 5/19–3 (West 2000)).

The circuit court of Kankakee County sentenced him to a term of natural life in prison for the first degree murder conviction and a consecutive term of 10 years in prison for the residential burglary. Defendant appealed, and the appellate court affirmed both the convictions and the sentences. *People v. Petrenko*, No. 3–02–0507 (2005) (unpublished order under Supreme Court Rule 23).

Defendant later filed a 17-page *pro se* postconviction petition raising 31 separate claims. The trial court summarily dismissed the petition as frivolous and patently without merit, and defendant appealed. On appeal, defendant argued that the summary dismissal of his petition was improper because two of his ineffective assistance of counsel claims stated the gist of a meritorious constitutional claim. In addition, defendant argued for the first time that, under this court's decision in *People v. Palmer*, 218 Ill. 2d 148 (2006), his consecutive term of years was void and must be modified to run concurrently with the natural-life term. The appellate court rejected both of defendant's arguments, finding that summary dismissal was proper and that defendant had forfeited the *Palmer* argument by not raising it previously. 385 Ill. App. 3d 479. We allowed defendant's petition for leave to appeal. 210 Ill. 2d R. 315.

ANALYSIS

Before this court, defendant raises the same two arguments that he raised below. First, defendant argues that he received ineffective assistance of both trial counsel and appellate counsel. According to defendant, his trial counsel was ineffective for failing to request a *Franks* hearing to contest the validity of a search warrant (see *Franks v. Delaware*, 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674 (1978)), and his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness as an issue on direct appeal. Second, defendant argues that, under *Palmer*, his 10-year sentence for residential burglary must be modified to run concurrently with, rather than consecutively to, his natural-life term.

Summary Dismissal
*The Post-Conviction Hearing Act*
The Post-Conviction Hearing Act (725 ILCS 5/122–1 *et seq.*

(West 2006)) provides a method by which persons under criminal sentence can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both. See 725 ILCS 5/122–1 *et seq.* (West 2006). A circuit court may summarily dismiss a postconviction petition if it determines that the petition is "frivolous or is patently without merit." 725 ILCS 5/122–2.1(a)(2) (West 2006). This court recently explained that a petition is frivolous or patently without merit only if it has no "arguable basis either in law or in fact." *People v. Hodges*, 234 Ill. 2d 1, 16 (2009). A petition lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as one that is completely contradicted by the record. *Hodges*, 234 Ill. 2d at 16. A petition lacks an arguable basis in fact if it is based upon a fanciful factual allegation, such as one that is clearly baseless, fantastic or delusional. *Hodges*, 234 Ill. 2d at 16-17. The summary dismissal of a postconviction petition is a legal question that is subject to *de novo* review. *People v. Coleman*, 183 Ill. 2d 366, 388-89 (1998).

Here, defendant's *pro se* petition alleged that both his trial counsel and his appellate counsel provided ineffective assistance. Ineffective assistance of counsel claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), and adopted by this court in *People v. Albanese*, 104 Ill. 2d 504 (1984). To prevail on a claim of ineffective assistance of counsel, a defendant must show both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. More specifically, the defendant must demonstrate that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068. The *Strickland* standard applies equally to claims of ineffective appellate counsel, and a defendant raising such a claim must show both that appellate counsel's performance was deficient and that, but for counsel's errors, there is a reasonable probability that the appeal would have been successful. *People v. Golden*, 229 Ill. 2d 277, 283 (2008). At the

-3-

first stage of proceedings under the Act, a petition alleging ineffective assistance of counsel may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced. *Hodges*, 234 Ill. 2d at 17.

Although defendant raised numerous ineffective assistance of counsel claims in his *pro se* petition, only two of those claims are at issue in this appeal. The first is that defendant's trial counsel was ineffective for failing to contest the validity of the search warrant that was issued for defendant's home. The second is that defendant's appellate counsel was ineffective for failing to raise trial counsel's error as an issue on direct appeal.

In support of these claims, defendant maintains that the officer who requested the search warrant for defendant's home "knowingly and with reckless disregard for the truth included false statements" in the affidavit he submitted in support of the warrant application. In that affidavit, the officer informed the court that the victim, Rubin Rivas, was found face down and dead in his home, having been bludgeoned to death with "a hammer, or similar object." Rivas lived in one unit of a duplex, with defendant and his family occupying the other. According to the officer, the evidence linking defendant to the crime included the following: a left-handed white glove with red, blue, and white paint on it that was found in Rivas's house; a right-handed white glove with red, blue, and white paint on it that was found in defendant's garbage; mail addressed to Rivas that was found in defendant's garbage; a small metal object broken off in the lock of Rivas's back door; a broken key with the tip missing that was found in defendant's garbage; and a fingerprint from defendant that was found in Rivas's home on an empty ceramic jar in which Rivas was known to keep his rent money in cash. Based on this information, the circuit court issued a search warrant for defendant's home, where additional evidence was found linking defendant to the murder.

According to defendant, the record shows that the officer who requested the search warrant for defendant's home intentionally omitted from the supporting affidavit certain information that, if disclosed, would have negated the presence of probable cause. Specifically, defendant contends the officer's trial testimony shows that, at the time he requested the warrant, the officer knew that

defendant had been a guest in Rivas's home approximately five days before the murder. This information, defendant insists, provided a lawful explanation for the presence of defendant's fingerprint on the empty money jar and therefore would have precluded a probable cause finding if disclosed. Accordingly, defendant's trial counsel was ineffective for failing to contest the validity of both the warrant and the evidence it produced, once the officer's knowledge was disclosed at trial. In addition, defendant argues that his appellate counsel was ineffective for failing to raise trial counsel's ineffectiveness as an issue on direct appeal.

After thoroughly reviewing both defendant's petition and the supporting record, we conclude that the trial court properly dismissed defendant's *pro se* petition as frivolous and patently without merit. To begin with, defendant has clearly forfeited his claim that trial counsel was ineffective for failing to contest the validity of the search warrant. A postconviction proceeding is not an appeal from the judgment of conviction, but is a collateral attack on the trial court proceedings. *People v. Johnson*, 191 Ill. 2d 257, 268 (2000). Consequently, issues that could have been raised on direct appeal but were not are forfeited. *People v. Enis*, 194 Ill. 2d 361, 375 (2000). Here, defendant's claim concerning trial counsel's failure to contest the validity of the search warrant is based entirely on facts contained in the trial court record. That claim therefore could have been raised on direct appeal, and defendant's failure to do so results in its forfeiture.

That leaves defendant's claim that his appellate counsel was ineffective for failing to raise trial counsel's error. Unlike defendant's claim for ineffective assistance of trial counsel, this claim is not forfeited, as this court has elected to relax the ordinary forfeiture rules with respect to postconviction claims stemming from appellate counsel's ineffectiveness. See *People v. Williams*, 209 Ill. 2d 227, 233 (2004).

The question, therefore, is whether defendant's ineffective assistance of appellate counsel claim has no arguable basis either in law or in fact–that is, whether it is based on either an indisputably meritless legal theory or a factual allegation that is clearly baseless, fantastic or delusional. *Hodges*, 234 Ill. 2d at 16-17. We will begin with the claim's legal basis.

*Legal Basis*

In *Franks*, the United States Supreme Court recognized a limited right to challenge the veracity of the affidavit supporting a search warrant. In order to overcome the presumption of validity that attaches to a warrant affidavit and obtain a *Franks* hearing, a defendant must make a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit" and that "the allegedly false statement is necessary to the finding of probable cause." *Franks*, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676. A "substantial preliminary showing" is made where the defendant offers proof that is "somewhere between mere denials on the one hand and proof by a preponderance on the other." *People v. Lucente*, 116 Ill. 2d 133, 151-52 (1987). If, after the alleged untruths in the warrant affidavit are set aside, the remaining statements in the affidavit are sufficient to establish probable cause, no hearing is required. *Franks*, 438 U.S. at 171-72, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684. The principles underlying the *Franks* decision also apply where information necessary to a determination of probable cause is intentionally or recklessly omitted from the affidavit. *People v. Stewart*, 105 Ill. 2d 22, 43 (1984). In such cases, "[t]he defendant must show that the information omitted was material to the determination of probable cause and that it was omitted for the purpose of misleading the magistrate." *Stewart*, 105 Ill. 2d at 44. Omitted information is "material" where it is of such a character that had it been included in the affidavit it would have defeated probable cause. *People v. Hickey*, 178 Ill. 2d 256, 282 (1997).

Here, defendant insists that had the requesting officer disclosed the fact that defendant had been in Rivas's home lawfully just days before the murder, the issuing judge would not have found probable cause to issue the warrant because defendant's lawful presence in the home provides an innocent explanation for the presence of defendant's fingerprint at the crime scene. We disagree. We are dealing here not with a trial, but with a probable cause hearing, where the State's burden is substantially lower. At a probable cause hearing, the trial court's task is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit,

-6-

there is " 'a fair probability that contraband or evidence of a crime will be found in a particular place.' " *People v. Hickey*, 178 Ill. 2d 256, 285 (1997), quoting *Illinois v. Gates*, 462 U.S. 213, 238-39, 76 L. Ed. 2d 527, 548, 103 S. Ct. 2317, 2332 (1983). In other words, the probable cause requirement is "rooted in principles of common sense." *Hickey*, 178 Ill. 2d at 285. Setting aside for the moment the additional evidence that the requesting officer included in his affidavit, we are here faced with the rather compelling fact that defendant's fingerprint was found not simply at the crime scene, but rather on an empty ceramic jar in which the murder victim was known to keep upwards of $450 in cash. Whether or not defendant's prior lawful presence in Rivas's home was disclosed to the issuing judge, the presence of defendant's fingerprint *in that particular location* is sufficient, probably by itself, to establish probable cause. In other words, had the requesting officer disclosed the allegedly withheld information, the weight of the fingerprint evidence would not have changed for purposes of probable cause. Now add to this the fact that defendant's fingerprint was *not* the only evidence described to the issuing judge, but was in fact included among other things such as the right-handed glove, the mail addressed to Rivas, and the broken key (all of which were found in defendant's trash), and there is simply no possibility that the disclosure of defendant's prior lawful presence at the murder scene would have impacted, let alone defeated, the trial court's probable cause finding.

In short, defendant's prior lawful presence in Rivas's home was not "material information" for purposes of *Franks*. This is because, even had it been disclosed in the supporting affidavit, it would not have defeated or in any way undermined the trial court's probable cause finding. Accordingly, any argument premised upon trial counsel's failure to request a *Franks* hearing would not have succeeded on direct appeal. For these reasons, we find that there is no arguable legal basis for defendant's ineffective assistance of appellate counsel claim and that summary dismissal of his *pro se* postconviction therefore was proper.

In reaching this result, we note that, both in the appellate court and before this court, defendant argued that the requesting officer showed additional reckless disregard for the truth by failing to disclose in the supporting affidavit that the mail found in defendant's

trash was several months old. According to defendant, this omission would have provided an additional basis for requesting a *Franks* hearing, and trial counsel's failure to request one, as well as appellate counsel's failure to raise trial counsel's oversight as an issue on direct appeal, therefore amounted to ineffective assistance.

The problem with this argument is that it was not raised in the petition that defendant filed in the trial court. In *People v. Jones*, 211 Ill. 2d 140, 148 (2004), this court explained that " '[t]he question raised in an appeal from an order dismissing a post-conviction petition is whether the allegations *in the petition*, liberally construed and taken as true, are sufficient to invoke relief under the Act.' " (Emphasis in original.) Thus, any issues to be reviewed must be presented *in the petition* filed in the circuit court, and a defendant may not raise an issue for the first time while the matter is on review. *Jones*, 211 Ill. 2d at 148. Here, defendant argued in his *pro se* petition that trial counsel was ineffective for failing to contest the validity of the February 3, 2000, search warrant that was issued for his home. According to defendant, trial counsel should have contested that warrant because (1) the requesting officer withheld from the issuing judge facts that, if disclosed, would have provided an innocent explanation for the presence of defendant's fingerprint at the crime scene; and (2) the remaining evidence described in the affidavit, including the gloves, the broken key, and the "mail 7, 8, 9 months old addressed to the victim," failed to establish probable cause. Thus, while defendant's *Franks*-based ineffectiveness claims mention the age of the mail that was found in defendant's trash, they do not mention it as an example of information that was wrongfully withheld from the issuing judge. Rather, they mention it only in the context of arguing that the remaining evidence, including the mail, was insufficient to support a probable cause finding. For this reason, we hold that defendant has forfeited any ineffectiveness claims on review that are premised upon the requesting officer's alleged failure to disclose the age of the mail found in defendant's trash. *Jones*, 211 Ill. 2d at 148.


Consecutive Sentencing

Defendant next argues that his 10-year sentence for residential burglary must be modified to run concurrently with, rather than

consecutively to, his natural-life term. In support, defendant cites this court's decision in *People v. Palmer*, 218 Ill. 2d 148 (2006). The State responds first by arguing that defendant has forfeited this argument because he raised it for the first time on appeal from the summary dismissal of his postconviction petition. In the alternative, the State argues that *Palmer* does not apply to this case.

We begin with the forfeiture question. It is well settled that a sentence that is in conflict with statutory guidelines is void and may be challenged at any time. *People v. Roberson*, 212 Ill. 2d 430, 440 (2004). In *Palmer*, this court held that the imposition of consecutive sentences in that case was "contrary to the legislature's intent" and therefore void. *Palmer*, 218 Ill. 2d at 163. Here, defendant is arguing that his consecutive sentences are indistinguishable from those at issue in *Palmer* and therefore void for the very same reasons. This is clearly a voidness challenge, and defendant has not forfeited it.

As for the merits of defendant's voidness claim, we find that defendant's reliance on *Palmer* is misplaced. Palmer was convicted of seven separate Class X felonies. Prior to sentencing, the State filed a petition to have him declared an habitual criminal under the Habitual Criminal Act (Act) (720 ILCS 5/33B–1 *et seq.* (West 2000)). The trial court granted the State's petition and, pursuant to the Act, sentenced Palmer to natural-life terms on all seven counts. In addition, the trial court found that Palmer was eligible for consecutive sentencing under section 5–8–4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5–8–4(a) (West 2000)). Accordingly, the trial court ordered that all seven of the Palmer's natural-life terms be served consecutively. Before this court, Palmer argued, *inter alia*, that the trial court erred in ordering his natural-life sentences to run consecutively. We agreed, finding that, because the Habitual Criminal Act is a "separate sentencing scheme" from that set forth in the Unified Code of Corrections, defendants who are sentenced pursuant to the Act are not subject to the consecutive-sentencing provisions found in section 5–8–4(a) of the Code. Accordingly, the trial court's imposition of consecutive sentences was void for lack of statutory authority, and this court modified Palmer's sentences to run concurrently. *Palmer*, 218 Ill. 2d at 163-64.

*Palmer*, then, stands simply for the proposition that defendants sentenced to natural life in prison under the Habitual Criminal Act are

not subject to the consecutive-sentencing provisions of the Unified Code of Corrections. In this case, defendant's natural-life sentence was not imposed under the Habitual Criminal Act. Rather, it was imposed under section 5–8–1(a)(1)(b) of the Unified Code of Corrections (730 ILCS 5/5–8–1(a)(1)(b) (West 2000)). Consequently, *Palmer*'s prohibition on consecutive sentencing has no application to this case. At the same time, defendant does not dispute that he falls squarely within the class of defendants for whom section 5–8–1(a)(1)(b) specifically mandates consecutive sentencing. In other words, while defendant insists that his consecutive sentences are void, he has identified nothing in either the Unified Code of Corrections or in this court's jurisprudence that in any way prohibits consecutive sentencing in this case. We therefore reject defendant's voidness challenge and affirm both of his sentences, as imposed.

In reaching this result, we acknowledge that, after concluding that Palmer was never even subject to section 5–8–4(a), the court nevertheless went on to discuss the propriety of imposing consecutive natural-life sentences under that very section. See *Palmer*, 218 Ill. 2d at 164-70. Indeed, the court even went so far as to "hold" that section 5–8–4(a) does not allow for the imposition of consecutive natural-life sentences, "both according to natural law and within the plain meaning of [section 5–8–4(a)]." *Palmer*, 218 Ill. 2d at 164-65. We now recognize that the entire discussion of section 5–8–4(a), and more specifically any "holding" with respect to the imposition of consecutive natural-life sentences pursuant to that section, was a mistake. This is because, once the court concluded that Palmer was never even eligible for consecutive sentencing under section 5–8–4(a) in the first place, anything it went on to say about the impossibility of serving consecutive natural-life sentences could in no way affect the outcome of that case. The analysis at that point became largely advisory (see *In re Barbara H.*, 183 Ill. 2d 482, 490-91 (1998) (a decision is advisory if it cannot result in appropriate relief to the prevailing party)), and this court has long expressed its reluctance to consider issues where they are not essential to the disposition of the cause or where the result will not be affected regardless of how the issue is decided (*Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990)).

Moreover, we now recognize that our discussion of section 5–8–4(a) was incorrect on the merits. In *Palmer*, the court was faced

with an extreme and somewhat absurd fact pattern: a defendant who was ordered to serve seven consecutive natural-life sentences. In reaction to this set of facts, the court expressed its disapproval of a statutory sentencing scheme that can produce sentences that no human being could ever realistically serve. However, this court has long recognized that the legislature has the power to determine the appropriate punishment for criminal conduct (*People v. Taylor*, 102 Ill. 2d 201, 205 (1984)), and the judiciary is bound to fashion sentences within the parameters set forth by the legislature (*People v. Wooters*, 188 Ill. 2d 500, 506 n.1 (1999)). The legislature has determined that the imposition of consecutive natural-life sentences serves a legitimate public policy goal, and even if its effect is purely symbolic, it is within the purview of the legislature to make that determination.

Our discussion of section 5–8–4(a) in *Palmer* has resulted in a series of lower court decisions that go far beyond rectifying the specific absurdity the court faced in *Palmer*. See, *e.g.*, *People v. Ramey*, 393 Ill. App. 3d 661, 670-71 (2009) (holding that *Palmer* prohibits the imposition of any sentence consecutive to a natural-life term); *People v. Williams*, 385 Ill. App. 3d 359, 371 (2008) (same); *People v. Waldron*, 375 Ill. App. 3d 159, 161 (2007) (same); *People v. Dixon*, 366 Ill. App. 3d 848, 856 (2006) (same). This court neither intended nor envisioned that its decision in *Palmer* would jeopardize the enforcement of section 5–8–4(a) in such cases, and we therefore overrule the portion of *Palmer* holding that the imposition of consecutive natural-life sentences is impermissible both under section 5–8–4(a) and under natural law. From this point forward, the courts of this state are to enforce section 5–8–4(a) as written and without regard to the practical impossibility of serving the sentences it yields. Of course, we would be remiss in making this determination without addressing the doctrine of *stare decisis*. That doctrine " ' "expresses the policy of the courts to stand by precedents and not to disturb settled points." ' " *People v. Colon*, 225 Ill. 2d 125, 145 (2007), quoting *People v. Caballes*, 221 Ill. 2d 282, 313 (2006), quoting *Neff v. George*, 364 Ill. 306, 308-09 (1936). However, *stare decisis* is not an "inexorable command," and "[i]f it is clear a court has made a mistake, it will not decline to correct it." *Colon*, 225 Ill. 2d at 146. It is clear that a mistake was made in *Palmer*, and we have good cause

to rectify it in this case.[1]

CONCLUSION

In sum, we conclude both that the summary dismissal of defendant's *pro se* postconviction petition was proper and that the imposition of consecutive sentences was not void. The judgment of the appellate court therefore is affirmed.

*Affirmed*.

JUSTICE FREEMAN, specially concurring:

I join fully in that section of today's opinion which addresses the summary dismissal of defendant's postconviction petition. Although I ultimately agree with the court's resolution of the consecutive-sentencing issue, I do so for reasons other than those set forth in the court's opinion.

In challenging his consecutive sentences, defendant relies on *People v. Palmer*, 218 Ill. 2d 148 (2006). *Palmer* holds that because the Habitual Criminal Act is a separate sentencing scheme from the Unified Code of Corrections, the Unified Code's consecutive-sentencing provision did not apply to the defendant, who had been sentenced to multiple natural-life sentences to be served consecutively. *Palmer*, 218 Ill. 2d at 163. The court, however, also went on to discuss the effect of the laws of nature on sentencing in general. Acknowledging the "impossibility of serving consecutive natural-life sentences *both* according to *natural law* and within the plain meaning of the 'consecutive' sentencing law, section 5–8–4(a)" of the Unified Code (emphases added) (*Palmer*, 218 Ill. 2d at 164),

---

[1] In his special concurrence, Justice Freeman states that the *Palmer* majority likewise erred in holding that defendants sentenced to natural life in prison under the Habitual Criminal Act are not subject to the consecutive-sentencing provisions of the Unified Code of Corrections. This case, however, does not present an opportunity to pass on that matter directly, as unlike the defendant in *Palmer*, defendant here was not sentenced under the Habitual Criminal Act.

-12-

the court "explicitly" found that the "defendant's actual sentence is governed by *the laws of nature*, regardless of whether a trial judge imposes his sentence consecutively or concurrently" (emphasis added) (*Palmer*, 218 Ill. 2d at 169).

The sentencing issue in this case, as well as how the court goes about addressing it, requires that we reexamine *Palmer*. Although the Act does not operate here, defendant is right to recognize that the same "impossibility" acknowledged in *Palmer* occurs here: as a literal matter, it is impossible to serve a 10-year term consecutively to a sentence of natural life. This makes the court's observation about defendant not being able to point to anything in this court's jurisprudence to support his position (slip op. at 10) false. The support rests squarely with the holding in *Palmer* that such sentences are governed by the laws of nature, which is the same part of *Palmer* that the court today repeatedly says was a "mistake" (slip op. at 10, 11). "Mistake" is an understatement, but that is beside the point.

The court goes to great lengths to salvage some of *Palmer*, but I do not see much worth in the effort. *Palmer*'s analysis was predicated on the fact that a majority of this court at that time believed that any construction of "consecutive" as used in section 5–8–4(a) had to begin with the recognition that it is theoretically impossible to serve multiple life sentences. See *Palmer*, 218 Ill. 2d at 165 (noting "[p]revious judicial pronouncements have failed to acknowledge the impossibility of serving and enforcing sentences consecutive to death or life without parole"); see also *People v. Ramey*, 393 Ill. App. 3d 661, 670 (2009) (noting that *Palmer* discussed the "irrationality" of consecutive life sentences). This marked the first time, in dealing with the Unified Code, that this court had ever relied upon natural law to interpret the intent of the legislature. Indeed, until *Palmer* was announced, this court had never acknowledged, in any way, the impossibility of serving multiple life sentences, nor had it ever taken "judicial notice" of the fact that one has but one life to live. See *People v. Hendricks*, 137 Ill. 2d 31 (1990) (upholding four consecutive life sentences); *People v. Caballero*, 206 Ill. 2d 65 (2002) (holding the defendant's death sentence was not constitutionally disproportionate to his codefendant's *three* consecutive life sentences). *Palmer* changed that by holding that, in order for a sentence to be consistent with the laws of nature, multiple

-13-

consecutive life sentences had to be served concurrently. *Palmer*, 218 Ill. 2d at 169-70; see also *Ramey*, 393 Ill. App. 3d 370 (noting that, "[a]ccording to our supreme court, sentences consecutive to a life sentence violate natural law and must be modified to be served concurrently").

After considering the appellate court cases which have followed in the wake of *Palmer*, I believe it was unwise for me to join in an opinion which elevated, in construing section 5–8–4(a), the theoretical impossibility of serving such sentences over both the fact that the General Assembly had specifically authorized such sentences and the legitimate public policy concerns that previous courts had identified to uphold those kinds of sentences (see *People v. Hattery*, 183 Ill. App. 3d 785 (1989); *People v. Bush*, 103 Ill. App. 3d 5 (1981)). I reach this conclusion for a number of reasons.

First, *Palmer*'s entire construction of the word "consecutive," as it is used in section 5–8–4(a), is based entirely on the fact that it is impossible to serve more than one life sentence. However, we overlooked the fact that just as it was self-evident to us that a defendant has but one life to live, so too was it evident to the legislature, which nevertheless chose to set punishments in such fashion, and in so doing indicated its intent in this area.

Second, we failed to recognize how the expansiveness of our holding would affect the application of other sentencing provisions in the Unified Code. For example, in *People v. Wuebbels*, 396 Ill. App. 3d 763 (2009), the appellate court applied *Palmer*'s "laws of nature" analysis to conclude that section 5–8–4(f) of the Unified Code cannot be applied as written. Section 5–8–4(f) provides that "[a] sentence of an offender committed to the Department of Corrections at the time of the commission of the offense shall be served consecutive to the sentence under which he is held by the Department of Corrections." 730 ILCS 5/5–8–4(f) (West 1996). *Wuebbels* concerned a defendant who, while serving a natural-life sentence, stabbed a prison guard with a spear. He was found guilty of attempted murder and possession of a weapon by a person in the custody of the Department of Corrections and received maximum sentences of 60 years for the attempted murder and 30 years for the weapon possession to run consecutively to each other and to the natural-life term. Based on *Palmer*, the appellate court modified the sentences to

run concurrently because "a prison term of years cannot follow a natural-life sentence as the defendant's life is over at the end of the natural-life sentence." *Wuebbels*, 396 Ill. App. 3d at 768. In so doing, the court criticized *Palmer*'s rationale. *Wuebbels*, 396 Ill. App. 3d at 768.

*Wuebbels* demonstrates the problem inherent with *Palmer*'s recognition that criminal sentences are "governed by the laws of nature." *Palmer*, 218 Ill. 2d at 169. After *Palmer*, all consecutive sentences imposed must be assessed by reviewing courts to ensure that they are consistent with the laws of nature. Should these laws of nature take into account the age or health of an individual? Take for example, a 55-year-old, terminally ill defendant convicted of murder, aggravated criminal sexual assault, and armed robbery. Assume that this hypothetical defendant receives 60 years for the murder, 30 years for the sexual assault, and 25 years for the armed robbery to run consecutively to each other. The consecutive sentences for the sexual assault and the armed robbery would be just as theoretically impossible to serve as multiple life sentences are. Natural law would thus preclude any number of sentences given their length and the relative health or age of the defendant. Does natural law require a judge to consult actuarial tables before imposing consecutive sentences? The holding in *Palmer* thus has the potential to wreak havoc with numerous sentencing provisions and thwarts the purposes behind differentiating between concurrent and consecutive sentencing.

In light of the above, I believe that *Palmer*'s statutory construction analysis was badly reasoned and shortsighted from the start. Although the Act does establish a separate sentencing scheme from the Unified Code, the reference to the Act in the Unified Code demonstrates that the two schemes can be read together. And more importantly, the majority in *Palmer*–myself included–should never have invoked the "laws of nature" to decide what was a fairly routine case of statutory interpretation. By introducing the concept of natural law to consecutive and concurrent sentences in such expansive terms, we have, in essence, isolated our decision from legislative correction. In fact, we went so far in *Palmer* as to identify the harshest penalty short of death: "concurrent natural-life sentences." *Palmer*, 218 Ill. 2d at 169. Thus, even if the General Assembly were to disagree and

enact legislation to the contrary, as is its prerogative, that legislation could never trump a judicial ruling based on natural law. It is therefore not surprising that there has been no legislative action subsequent to *Palmer* that would call into question what *Palmer* said about legislative intent. *Palmer*'s "explicit finding" (*Palmer*, 218 Ill. 2d at 164) that natural law governs criminal sentences places sentencing considerations for this case beyond the mere actions of the General Assembly, as I have already noted. Indeed, how can the General Assembly act in the face of such higher power?

Nor is it surprising that the appellate court has faithfully applied *Palmer*. As that court noted in both *Ramey* and *Wuebbels*, it is bound to follow our decision until this court says otherwise. Today's case provides the opportunity, our first since *Palmer* was filed, to do just that.

*Stare decisis* is, as the United States Supreme Court has recognized, "essential to the respect accorded to the judgments of [a reviewing court] and to the stability of the law." *Lawrence v. Texas,* 539 U.S. 558, 577, 156 L. Ed 2d 508, 525, 123 S. Ct. 2472, 2483 (2003). What it is not, however, is a "mechanical formula of adherence to the latest decision" (*Helvering v. Hallock*, 309 U.S. 106, 119, 84 L. Ed. 2d 604, 612, 60 S. Ct. 444, 451 (1940)), as the dissent would have it. The doctrine certainly does not compel us to follow a past decision when its rationale no longer withstands "careful analysis." *Lawrence*, 539 U.S. at 577, 156 L. Ed. 2d at 525, 123 S. Ct. at 2483. I further acknowledge that prior decisions should not be overruled absent "good cause." *Moehle v. Chrysler Motors Corp.*, 93 Ill. 2d 299, 304 (1982). But whether the rationale in a case no longer withstands careful analysis or whether good cause exists for a departure from *stare decisis* in any given case is a question upon which reasonable minds may sometimes differ. *In re Commitment of Simons*, 213 Ill. 2d 523, 546 (2004) (Freeman, J., dissenting, joined by Kilbride, J.). Recently, this court has unanimously acknowledged that good cause exists when governing decisions are "badly reasoned." *People v. Colon*, 225 Ill. 2d 125, 146 (2007). That description fits *Palmer* to a tee, and the case should be flatly overruled.


JUSTICE BURKE, concurring in part and dissenting in part:

-16-

I agree with the majority that summary dismissal of defendant's *pro se* postconviction petition was proper. I disagree, however, with the majority's conclusion that defendant's consecutive sentences are not void.

In the case at bar, defendant was sentenced to one term of natural life and a consecutive term of 10 years in prison. On appeal, defendant argues that his consecutive sentences are void under *People v. Palmer*, 218 Ill. 2d 148 (2006), and that his sentences should be concurrent.

In *Palmer*, we reversed the circuit court's imposition of the defendant's consecutive natural-life sentences and modified the sentences to run concurrently. *Palmer*, 218 Ill. 2d at 169-70. We offered two reasons for doing so. First, we held that, because defendant was sentenced under the Habitual Criminal Act (720 ILCS 5/33B–1 (West 2002)), he was not subject to consecutive sentencing. *Palmer*, 218 Ill. 2d at 163. Second, and "more importantly," we held that it was impossible to serve consecutive natural-life sentences, "both according to natural law and within the plain meaning of the 'consecutive' sentencing law, section 5–8–4(a)." *Palmer*, 218 Ill. 2d at 164. Because of the relevance of this second, alternative holding to the present case, I quote our discussion in *Palmer* at length:

> "Perhaps more importantly, we recognize the impossibility of serving consecutive natural-life sentences both according to natural law and within the plain meaning of the 'consecutive' sentencing law, section 5–8–4(a). 730 ILCS 5/5–8–4(a) (West 2002). This impossibility is based on the critical distinction between a term of natural-life imprisonment and that of a term of years, namely, the particular sentences' potential for release of defendant. Unlike a term of years, the Code provides that '[n]o person serving a term of natural life imprisonment may be paroled or released except through executive clemency.' 730 ILCS 5/3–3–3(d) (West 2002). With the unavailability of parole or release for defendant in mind, we examine section 5–8–4(a) of the Code (730 ILCS 5/5–8–4(a) (West 2002)). It provides:
>
> > 'Concurrent and Consecutive Terms of Imprisonment.
> >
> > (a) When multiple sentences of imprisonment are

imposed on a defendant at the same time, \*\*\* the sentences shall run concurrently or consecutively as determined by the court. \*\*\* The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless:

> (i) one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury, \*\*\*

> \* \* \*

> in which event the court shall enter sentences to run consecutively.['] 730 ILCS 5/5–8–4(a)(i) (West 2002).

All of the offenses committed by defendant were Class X offenses, and there is no dispute that defendant inflicted severe bodily injury to both M.J. and D.J. *However, we hold that section 5–8–4(a) does not apply here, based on the plain meaning of the word 'consecutive.'*

The necessity of this holding is foreshadowed in our case law. Previous judicial pronouncements have failed to acknowledge the impossibility of serving and enforcing sentences consecutive to death or life without parole. \*\*\*

\* \* \*

Here, we attempt to relieve this judicial uneasiness by acknowledging the elephant in the room and the plain meaning of the word 'consecutive.' 'Consecutive' has been defined as 'following esp. in a series: one right after the other often with small intervening intervals.' Webster's Third New International Dictionary 482 (1993). Additionally, 'consecutive sentences' are 'two or more sentences of jail time to be served in sequence. For example, if a defendant receives consecutive sentences of 20 years and five years, the total amount of jail time is 25 years.' Black's Law Dictionary 1393-94 (8th ed. 2004). It belabors the obvious to state that at the conclusion of a defendant's first natural-life sentence, his

life is over. Further, the Department of Corrections cannot enforce an order imposing another natural-life sentence consecutive to it. Thus, consecutive natural-life sentences cannot follow in a series right after one another. Defendant cannot serve two natural-life sentences in sequence, nor will the total amount of two or more natural-life sentences ever be more than defendant's one life. There is only one way in which a defendant can serve the sentences, with his one life. Therefore, the sentences may not be consecutive, but must be concurrent because concurrent sentences are sentences which operate simultaneously. Black's Law Dictionary 1393 (8th ed. 2004).

\* \* \*

\*\*\* We explicitly find, as these aforementioned courts also did implicitly, that defendant's actual sentence is governed by the laws of nature, regardless of whether a trial judge imposes his sentence consecutively or concurrently. Because defendant may only serve these sentences concurrently, we reverse the circuit court's imposition of consecutive natural-life sentences on the five remaining convictions. Accordingly, under Supreme Court Rule 615(b)(4) [citation], we change the defendant's sentence to five concurrent sentences of natural-life imprisonment." (Emphasis added.) *Palmer*, 218 Ill. 2d at 164-65, 167-68, 169-70.

Our holding in *Palmer* regarding the plain meaning of the word "consecutive" applies to defendant's consecutive sentences here. Just as it was impossible for the defendant in *Palmer* to serve more than one consecutive natural-life term, so too is it impossible for defendant to serve a term of years consecutively to a term of natural life. Further, as the majority acknowledges, a sentence which is in conflict with statutory guidelines is void and may be challenged at any time. Slip op. at 9, citing *Palmer*, 218 Ill. 2d at 163. Thus the appellate court in this case erred when it concluded that defendant's sentences were not void.

Nevertheless, the majority finds that "defendant's reliance on *Palmer* is misplaced." Slip op. at 9. The majority states that *Palmer* "stands simply for the proposition that defendants sentenced to

-19-

natural life in prison under the Habitual Criminal Act are not subject to the consecutive-sentencing provisions of the Unified Code of Corrections." Slip op. at 9. Because the defendant in the instant case was not sentenced under the Habitual Criminal Act, the majority concludes, "*Palmer*'s prohibition on consecutive sentencing has no application to this case." Slip op. at 10.

The majority reaches this result by reading out of *Palmer* our holding regarding the plain meaning of the word "consecutive." The majority finds that, once the *Palmer* court declared that the defendant was not eligible for consecutive sentencing because he was sentenced under the Habitual Criminal Act, anything the court "went on to say about the impossibility of serving consecutive natural-life sentences could in no way affect the outcome of that case" and, thus, was "not essential to the disposition of the cause." Slip op. at 10. From this, the majority concludes that our holding in *Palmer* regarding the plain meaning of the word "consecutive" was "advisory." Slip op. at 10. In the majority's view, our holding was not truly a holding, but was something less: a " 'holding' " with quotation marks around the word.[2] It was, in short, a "mistake." Slip op. at 10.

The majority's conclusion that our holding in *Palmer* regarding the plain meaning of the word "consecutive" was a "mistake" because it was "not essential to the disposition of the cause" (slip op. at 10) is illogical. Consider what would occur if either one of the two alternative holdings were removed from *Palmer*. Under either holding standing alone, the defendant could not receive consecutive natural-life sentences. Because either holding may be removed from *Palmer* without affecting the result, neither holding is "essential to the disposition of the cause." Both holdings, therefore, are "mistakes" if the majority's reasoning is applied. This cannot be correct.

Further, what if the order in which the holdings appeared in *Palmer* had been reversed? If such were the case, under the majority's reasoning, one would be forced to conclude that *Palmer*'s holding

---

[2]Statements in a judicial opinion that are something less than a holding are, of course, *dicta*. Thus, although the majority avoids using the word, it is clear that the majority views our discussion in *Palmer* regarding the plain meaning of the word "consecutive" as *dicta*.

about the impossibility of serving consecutive natural-life sentences was the only holding, and the finding that the defendant was not statutorily eligible for consecutive sentencing under the Habitual Criminal Act was a "mistake" because it was not "essential" to our decision. Surely, the precedential value of holdings in an opinion should not depend on the order in which they happen to be arranged.

The fact is that neither of our alternative holdings in *Palmer* was "advisory" or a "mistake." This is a black letter rule of appellate law. As the United States Supreme Court has explained:

> "But it is urged that what we have described as ruled [in a previous case] was *obiter dictum* and should be disregarded, because the Court there gave a second ground for its decision which was broad enough to sustain it independently of the first ground. The premise of the contention is right but the conclusion is wrong; for where there are two grounds, upon either of which an appellate court may rest its decision, and it adopts both, 'the ruling on neither is *obiter*, but each is the judgment of the court and of equal validity with the other.' " *United States v. Title Insurance & Trust Co.*, 265 U.S. 472, 486, 68 L. Ed. 1110, 1114, 44 S. Ct. 621, 623 (1924), quoting *Union Pacific R.R. Co. v. Mason City & Fort Dodge R.R. Co.*, 199 U.S. 160, 166, 50 L. Ed. 134, 137, 26 S. Ct. 19, 20 (1905).

We recently reaffirmed this rule ourselves, in *Lebron v. Gottlieb Memorial Hospital*, Nos. 105741, 105745 cons., slip op. at 13 (February 4, 2010), citing *Woods v. Interstate Realty Co.*, 337 U.S. 535, 537, 93 L. Ed. 1524, 1526, 69 S. Ct. 1235, 1237 (1949) ("where a decision rests on two or more grounds, none can be relegated to the category of *obiter dictum*").

To be sure, there is always a measure of judicial discretion that is exercised when drafting a judicial opinion and, during the drafting process, judges may disagree over whether to include one or more alternative holdings. However, once an issue is considered by the court and an alternative holding is rendered, it is binding law. The holding cannot subsequently be evaded by calling it "advisory" or "not essential" or a "mistake." This is particularly true here, where the holding which the majority wishes to circumvent was not only expressly denominated as a holding by this court but was labeled the

-21-

"more important" of the holdings in the case.

Finally, the majority fails to justify or even acknowledge the sweeping scope of its decision: every alternative holding that is second in sequence, in every opinion filed by a court in this state, has now been declared "advisory" and a "mistake" because it is "not essential to the disposition of the cause." Slip op. at 10. This is a highly destabilizing ruling which will cause no end of confusion. There is no justification for this result.

After concluding that *Palmer*'s holding regarding the plain meaning of the word "consecutive" was a "mistake" because it was "not essential," the majority then goes on to offer an alternative reason for rejecting that holding: it was "incorrect on the merits" and therefore not subject to the constraints of *stare decisis*. Slip op. at 10-11. Of course, this second, alternative rationale is not essential to the majority's decision in this case. It is therefore "advisory," a "mistake," and may be disregarded on this ground alone.[3]

Moreover, the majority's conclusion that *Palmer*'s holding with respect to the plain meaning of the word "consecutive" is not subject to the constraints of *stare decisis* is incorrect.

> "The doctrine of *stare decisis* ' "expresses the policy of the courts to stand by precedents and not to disturb settled points." ' *People v. Caballes*, 221 Ill. 2d 282, 313 (2006), quoting *Neff v. George*, 364 Ill. 306, 308-09 (1936), *overruled on other grounds by Tuthill v. Rendelman*, 387 Ill. 321 (1944). In other words, ' "a question once deliberately examined and decided should be considered as settled and closed to further argument" ' (*Wakulich v. Mraz*, 203 Ill. 2d 223, 230 (2003), quoting *Prall v. Burckhartt*, 299 Ill. 19, 41 (1921)), so that the law will not change erratically, but will develop in a principled, intelligible fashion (*People v. Mitchell*, 189 Ill. 2d 312, 338 (2000))." *People v. Colon*, 225 Ill. 2d 125, 145-46 (2007).

While the doctrine of *stare decisis* is not absolute, any departure

---

[3]That the majority fails to apply its "alternative-holdings-are-a-mistake" rule in the very opinion in which it is adopted is a further indication that the rule is unwise.

from prior decisions must be " 'specially justified.' " *People v. Suarez*, 224 Ill. 2d 37, 50 (2007), quoting *People v. Sharpe*, 216 Ill. 2d 481, 520 (2005). Prior decisions may be overturned "only on the showing of good cause." *Heimgaertner v. Benjamin Electric Manufacturing Co.*, 6 Ill. 2d 152, 167 (1955); *Colon*, 225 Ill. 2d at 146.

In this case, the majority identifies two reasons that it believes constitute good cause for overturning *Palmer*. First, the majority states that, in *Palmer*, this court "expressed its disapproval" of a sentencing scheme that results in sentences that cannot actually be served. Slip op. at 11. This was error, the majority concludes, because "[t]he legislature has determined that the imposition of consecutive natural-life sentences serves a legitimate public policy goal, and even if its effect is purely symbolic, it is within the purview of the legislature to make that determination." Slip op. at 11.

The majority mischaracterizes *Palmer*. The court in *Palmer* did not "express its disapproval" of a sentencing scheme as if it were engaged in a dispute with the legislature over a question of public policy. Rather, as the lengthy quotation set forth above makes clear, the court attempted to discern legislative intent by applying a plain-language analysis to the consecutive-sentencing statute. Citing to Webster's and Black's Law Dictionary, the court concluded that the word "consecutive" means to follow in a series, one right after the other. The court then took judicial notice of a fact of natural law: human beings only have one life. Given the plain meaning of the word "consecutive," and given that the General Assembly was undoubtedly aware of human mortality when drafting the Code, the court in *Palmer* concluded that the legislature could not have intended for the consecutive sentencing scheme to apply when a defendant receives a natural-life sentence. Whether one agrees with this analysis or not, it cannot now be dismissed as nothing more than an "expression of disapproval" of a policy decision.

Further, the point raised by the majority here–that the legislature intended to allow the imposition of consecutive natural-life sentences–is the *identical* argument made by the dissenting justices in *Palmer*. See *Palmer*, 218 Ill. 2d at 174 (Garman, J., concurring in part and dissenting in part, joined by Thomas, C.J., and Karmeier, J.) ("The legislature has apparently determined that the imposition of

-23-

consecutive life sentences is meaningful, if only symbolically, and this court must give effect to the legislature's clear intent"). To hold that the dissent's reasoning in *Palmer* now constitutes good cause for overruling that decision is directly at odds with the principle that " 'a question once deliberately examined and decided should be considered as settled and closed to further argument.' " *Wakulich v. Mraz*, 203 Ill. 2d 223, 230 (2003), quoting *Prall v. Burckhartt*, 299 Ill. 19, 41 (1921); see also *People v. Lopez*, 207 Ill. 2d 449, 459 (2003) (this court " 'will not depart from precedent "merely because the court is of the opinion that it might decide otherwise were the question a new one" ' "), quoting *People v. Robinson*, 187 Ill. 2d 461, 464 (1999). Indeed, by holding that the same reasoning found in the dissent in *Palmer* provides good cause for overruling the decision, the majority openly invites litigants to repeatedly re-argue points that have been expressly rejected by this court.

The majority also concludes that good cause exists to overrule *Palmer* because this court "neither intended nor envisioned" that its holding regarding the plain meaning of the word "consecutive" would be applied to a natural-life sentence consecutively to a term of years. Slip op. at 11. The problem with this reasoning is that the majority does not support it with anything that was actually said in *Palmer*. The majority makes no attempt to distinguish *Palmer* from this case and, thus, concedes that the language and reasoning in *Palmer* do, in fact, apply to a natural-life sentence consecutive to a term of years. Accordingly, when the majority now states that the court in *Palmer* did not intend for its holding to apply to a natural-life sentence consecutive to a term of years, the majority is saying: "We did not mean what our words in *Palmer* actually say." This is plainly inappropriate.

What this court "intends or envisions" is found in the words contained in our opinions. If this court can simply state, after an opinion is filed, that the words in the opinion do not mean what they say–that there is another intention behind the words, unknown to the public–then we should not bother to write opinions. The majority's determination that we may disregard *Palmer* by baldly asserting "that's not what we meant"–without ever bothering to examine the actual language of the opinion–is not only contrary to the doctrine of *stare decisis*, but undermines the rule of law itself.

-24-

Moreover, consider the nature of the two reasons offered by the majority for overruling *Palmer*: "The dissent was right" and "We did not mean what we said." These rationales can be applied to every decision of this court in which a dissent has been filed. Again, this is completely contrary to the doctrine of *stare decisis*, which requires something different, some "special justification," for overturning a prior decision of this court. *Suarez*, 224 Ill. 2d at 50.

Justice Freeman, specially concurring, also attempts to justify overturning *Palmer*. The special concurrence reads *Palmer* as having announced a broad, free-standing rule, requiring that "all consecutive sentences imposed must be assessed by reviewing courts to ensure that they are consistent with the laws of nature." Slip op. at 15 (Freeman, J., specially concurring). According to the special concurrence, this broad ruling was error, and *Palmer* "should never have invoked the 'laws of nature' to decide what was a fairly routine case of statutory interpretation." Slip op. at 15 (Freeman, J., specially concurring). Thus, in the view of the special concurrence, *Palmer* was badly reasoned, and good cause exists to depart from the principles of *stare decisis*. Slip op. at 16 (Freeman, J., specially concurring). Like the majority, the special concurrence mischaracterizes *Palmer*.

The holding of *Palmer* was expressly stated:

> "[W]e hold that section 5–8–4(a) does not apply here, based on the plain meaning of the word 'consecutive.' " *Palmer*, 218 Ill. 2d at 165.

See also *Palmer*, 218 Ill. 2d at 167 ("Here, we attempt to relieve this judicial uneasiness by acknowledging the elephant in the room and the plain meaning of the word 'consecutive' "); *Palmer*, 218 Ill. 2d at 166 (noting that previous decisions have not "mentioned the plain meaning of the word 'consecutive' and the impossibility of serving any term of years consecutive to a death sentence"). As noted, the court in *Palmer* determined that the plain and ordinary meaning of the word "consecutive" means to follow in a series, one right after the other. *Palmer* then took judicial notice of one–and only one–law, or fact, of nature: that human beings have just one life. *Palmer*, 218 Ill. 2d at 167 ("It belabors the obvious to state that at the conclusion of a defendant's first natural-life sentence, his life is over"). It is, of course, not possible for a defendant to serve a "consecutive" sentence, in the plain and ordinary meaning of that word, once the defendant is

dead. Accordingly, given the plain meaning of the word "consecutive," *Palmer* concluded that the General Assembly could not have intended for the consecutive sentencing scheme to apply to a defendant who receives a natural-life sentence.

The dissenting justices in *Palmer* disagreed with this conclusion, but not because they disputed the plain meaning of the word consecutive. Rather, according to the dissenting justices, the controlling indication of legislative intent was found in the language of section 5–8–4(a), which states that the sentences for certain "triggering" felonies must be served consecutively when severe bodily injury is inflicted. Based on this language, the dissenting justices concluded "[t]he legislature has apparently determined that the imposition of consecutive life sentences is meaningful, if only symbolically, and this court must give effect to the legislature's clear intent." *Palmer*, 218 Ill. 2d at 174 (Garman, J., concurring in part and dissenting in part, joined by Thomas, C.J., and Karmeier, J.)

*Palmer* thus involved nothing more than a disagreement over legislative intent. The majority in *Palmer* found the controlling indication of legislative intent in the plain meaning of the word consecutive, while the dissenting justices found it in other language in the statute. Whatever one's view of this disagreement and the *Palmer* majority's position in it, the decision in *Palmer* was clearly not, as the special concurrence states, an announcement of some type of broad, free-standing rule of "natural law."

The special concurrence's mischaracterization of *Palmer* leads to further error. According to the special concurrence, *Palmer* must be overturned because, "[b]y introducing the concept of natural law to consecutive and concurrent sentences in such expansive terms, [the court], in essence, isolated [its] decision from legislative correction." Slip op. at 15 (Freeman, J., specially concurring). In the view of the special concurrence, the legislature "could never trump a ruling based on natural law" and, thus, the court in *Palmer* placed its decision "beyond the mere actions of the General Assembly" to respond to in any manner. Slip op. at 15-16 (Freeman, J., specially concurring). In this way, according to the special concurrence, the court exceeded its proper institutional role.

Again, the decision in *Palmer* was expressly based on the legislature's intent, as found in the plain and ordinary meaning of the

-26-

word "consecutive." *Palmer*, 218 Ill. 2d at 165 ("we hold that section 5–8–4(a) does not apply here, based on the plain meaning of the word 'consecutive' "). What this means is that the decision in *Palmer* was not based on some "higher power" (slip op. at 16 (Freeman, J., specially concurring)) that precludes legislative action. If the legislature desired, it could alter, via statute, the definition of the word "consecutive" and declare that it is the public policy of this state to allow consecutive natural-life sentences. If it did so, then the logic of *Palmer* would no longer apply. Thus, contrary to the special concurrence's assertions, the court in *Palmer* in no way overstepped its bounds or in some manner "isolated [its] decision from legislative correction." Slip op. at 15 (Freeman, J., specially concurring).

The fact that the court must labor so hard to find reasons for overturning *Palmer* points to one conclusion: there is no justification for overturning it. The holding in *Palmer*, though disagreed with by members of the court, rested on a conventional plain-meaning analysis of the word "consecutive," coupled with judicial notice of an indisputable fact: human mortality. There has been no subsequent legislative activity, such as a change to the definition of the word "consecutive," that would call *Palmer*'s determination of legislative intent into question. Nor has there been any confusion in applying *Palmer*, as even the State has conceded that it applies to a natural-life sentence consecutive to a term of years. See *People v. Dixon*, 366 Ill. App. 3d 848, 856 (2006). Indeed, the only reason the present case is before us is not because there is any disagreement as to whether *Palmer* applies to a natural-life sentence consecutive to a term of years, but because the appellate court held that defendant had forfeited his *Palmer* argument. And even this point is hardly a source of confusion, as the majority correctly rejects the appellate court's holding in four sentences. Slip op. at 8-9.

"Once a majority of this court has established a principle of law, *stare decisis* dictates that the principle should not be disregarded simply because some members of the court disagree or have changed their minds." *People v. Fuller*, 187 Ill. 2d 1, 23 (1999) (Bilandic, J., dissenting); *People v. Mitchell*, 189 Ill. 2d 312, 338 (2000). The majority's decision to overrule *Palmer* disregards this principle and reduces the doctrine of *stare decisis* to "nothing more than a pious cliche." *People v. Lewis*, 88 Ill. 2d 129, 167 (1981) (Ryan, J.,

concurring). Accordingly, I would modify defendant's consecutive sentences to run concurrently.